𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

LEE'S ADM'R V. HILL.

March 5th, 1891.

1 PRACTICE AT COMMON LAW—*Survival of action—Rule.*—Where cause of action is *tort* unconnected with contract, and affects the person only and not the estate, the action dies with the person; otherwise, where the action, though nominally *ex delicto*, is founded on contract.

2. IDEM—*Wrongful discharge—Form of action—Survival.*—Where one was wrongfully discharged by decedent, trespass on the case may be maintained under Code, § 2655, against the personal administrator, or *assumpsit* for breach of contract at common law. In either case the action survives. And when defendant dies pending the action, it may be revived against the personal representative.

3. CASES DISAPPROVED AND DISTINGUISHED.—*Henshaw* v. *Miller,* 17 How., 2 2, distinguished from case at bar; *Boyles* v. *Overby,* 11 Gratt., 202, disapproved.

4. STATUTE OF FRAUDS—*Case at bar.*—Where defendant, by parol, employed plaintiff in August for one year's service, to commence in October: *held,* the contract is not enforceable, the statute of frauds being pleaded.

5. EVIDENCE.—Where, pending action, defendant died and plaintiff became incompetent to testify, decedent's administrator at second trial may prove plaintiff's statements at first trial.

Error to judgment of circuit court of Danville, rendered January 24th, 1890, in an action of trespass on the case, wherein J. J. Hill was plaintiff and Thomas J. Lee's administrator was defendant. This case is the sequel to *Lee* v. *Hill,* 84 Va., 919. The action was trespass on the case for the alleged wrongful discharge of the plaintiff from the defendant's service, in violation of an express contract between the

VOL. LXXXVII—63

parties, whereby the plaintiff was employed to serve for one year in the capacity of a solicitor for the defendant's business as a tobacco warehouseman, at a monthly salary of one hundred dollars. At the first trial there was a judgment for the plaintiff for $800, which was reversed by this court, and the case remanded for a new trial.

After the case went back to the circuit court the defendant, having in the meantime died, an order was entered reviving the action against his administrator. To this action of the court the administrator, who is the appellant here, excepted. He then pleaded that the deceased was not guilty, and also filed a second plea relying on the statute of frauds; that is to say, averring that the contract mentioned in the declaration was not in writing, and was not to be performed within a year. To these pleas the plaintiff replied generally.

After the evidence had been closed the defendant demurred to the evidence, and the jury assessed the damages at $575, subject to the decision of the court upon the demurrer. The court gave judgment for the plaintiff, whereupon the defendant obtained a writ of error.

*H. E. Barksdale*, for the plaintiff in error.

*Peatross & Harris*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

1. The first question to be determined is, did the circuit court err in reviving the action against the administrator?

At common law an action was abated by the death of either party, and could not be revived for or against the personal representative. If the cause of action survived, it was necessary to bring a new suit. This, however, has long since been altered by statute, and now, if the cause of action survives, the action may be revived. Whether, therefore, the present

action was rightly revived depends upon whether or not the cause of action survives, and we are of opinion that it does.

The declaration, it is true, is in form *ex delicto,* but that *assumpsit* would lie for the injury complained of is undeniable. In such a case *assumpsit* and case are concurrent remedies; that is to say, an action *ex contractu* for the breach of the contract, or an action *ex delicto* for the breach of the duty, may be brought at the option of the plaintiff. Nor is it disputed that if the plaintiff in the present case had declared in *assumpsit* the action would survive. The appellant, however, contends that the action died with his decedent, because, he says, in an action of *tort* the rule *actio personalis moritur cum persona* applies. He contends that this is so at common law, and that the case is not within the statute now carried into section 2655 of the Code, which provides that "an action of trespass, or trespass on the case, may be maintained by or against a personal representative for the taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent." But this position, we think, is untenable.

It has sometimes been said that at common law all causes of action *ex contractu* survive ; whereas all *torts* die with the person. But neither of these propositions are strictly accurate. The general rule is that rights of the former class do survive, but the rule is not universal. Thus, for instance, a breach of promise to marry, or a breach of the implied contract of a medical practitioner, or of an attorney, to exercise skill in his profession, and other injuries of a personal nature, although arising *ex contractu,* that might be mentioned, constitute exceptions to the rule, unless, indeed, some special damage to the personal estate can be stated on the record. 1 Lom. Ex'ors, marg. p. 286; 1 Chit. Pl., 68; *Chamberlayne* v. *Williamson,* 2 Maule & S., 408; *Grubb's Adm'r* v. *Sult,* 32 Gratt., 203.

Nor do all actions in *tort,* at common law, die with the per-

son. The true test is, not so much the form of the action, as the nature of the cause of action. Where the latter is a *tort* unconnected with contract, and which affects the person only, and not the estate, such as assault, libel, slander, and the like, there the rule *actio personalis*, &c., applies. But where, as in the present case, the action is founded on a contract, it is virtually *ex contractu*, although nominally in *tort*, and there it survives.

This principle is illustrated by the case of *Powell* v. *Layton*, 5 Bos. & P., 365. That was an action of *tort* against one of several joint owners of a ship, for not safely conveying goods which had been delivered to him by the plaintiff for that purpose. The defendant pleaded, in abatement, that his partners ought to have been joined. To this plea the plaintiff demurred, and, in support of the demurrer, insisted that the action was on the *tort* (*i. e*, the negligence of the defendant), and not on the contract, and, therefore, that it was not necessary to declare jointly against all the partners. But the court overruled the demurrer, holding that the form of the action could not alter the nature of the transaction, which had its origin in contract. And Mansfield, C. J., seemed to be of opinion that an action in that form—its foundation being essentially contract—would lie against the executor.

This subject was discussed in *Booth* v. *Northrop*, 27 Conn., 325, which was an action on the case for a false warranty in the exchange of cattle. Pending the action the plaintiff died, and the question was, whether the action survived to the administrator. The court unanimously held that it did, and, in the course of its opinion, used this language :

" On the question of survivorship, we consider it immaterial whether the form of the remedy adopted is in *tort* or in contract, provided the cause of action is founded on a contract. The form of action brought to redress a wrong, sometimes, and indeed usually, indicates its nature, whether as arising independently of contract or not; but this is far from being

invariably so, there being many cases where the action, the cause of which grows out of a breach of contract, may be in form either *ex delicto*, as in case, or *ex contractu*, as in *assumpsit*. In determining whether a cause of action survives to the personal representative, the real nature of the injury or claim ought to be regarded, and not the form of the remedy by which it is sought to be redressed or enforced."

It is true this court in the earlier case of *Boyles' Adm'r* v. *Overby*, 11 Gratt., 202, decided differently. But the case was not argued on the losing side, and the decision was by a divided court, two of the judges dissenting. There the declaration was in case, and contained two counts. The first alleged a false warranty by the defendant's intestate in his lifetime in the sale of a slave. The second alleged a deceit in the sale of a slave by a fraudulent concealment of the unsoundness of the slave. The court were unanimously of opinion that the cause of action set out in the latter court, being both in form and substance *ex delicto*, died with the deceased; and a majority of the court were also of opinion that the same rule applied to the first count It was not doubted that an action *ex contractu* would lie against the administrator for the false warranty, but it was held that an action in *tort* would not, and the principal reason assigned was that the proof in the two classes of action would be different.

It is somewhat remarkable that there is no allusion in the majority opinion to the leading case of *Williamson* v. *Allison*, 2 East, 446, which established the contrary doctrine, and to which Judge Moncure referred in his dissenting opinion. That was an action in *tort* for a false warranty in the sale of certain goods, and the question before the King's Bench was whether the *scienter*, as laid in the declaration, was required to be proved. For the defendant it was contended that while in an action of *assumpsit* such proof is not required, it was otherwise in an action *ex delicto*. But it was held that there was no such distinction. Lord Ellenborough, C. J., observed that an

action in *tort* on the warranty broken was the ancient remedy in such cases, and that the modern practice of declaring in *assumpsit*, for the sake of adding the money counts, had not then prevailed over forty years. But no other proof, in either form of proceeding, he said, was required than the warranty itself, and the breach of it; that it was sufficient to prove the warranty broken to establish the deceit, and that the form of the action could not vary the proof in that respect.

But whatever may be said as to the correctness of the decision in *Boyles' Adm'r* v. *Overby*, the reasoning of the court has no application to the question before us, since in a case like the present, whether the action be in form in *tort* or in contract, the character of the proof and the measure of damages are confessedly the same.

It is sometimes said, on the supposed authority of Lord Mansfield in *Hambly* v. *Trott*, Cowp., 371, that where the declaration imputes a *tort*, and the plea must be not guilty, the action dies with the person. That was an action of trover, and what Lord Mansfield did say was this: "No action where in form the declaration must be *quare vi et armis, et contra pacem*, or where the plea must be not guilty, can lie against the executor. Upon the face of the record, the cause of action arises *ex delicto*." But by this was evidently meant *torts* committed with force, or, at all events, injuries other than those connected with contract, and for which, case and *assumpsit* are convenient remedies; for it was immediately added, that "all private criminal injuries or wrongs, as well as all public crimes, are buried with the offender."

If, however, there were any doubt that the cause of action asserted in the present case survives at common law, it would seem clear that the action was rightly revived by virtue of the statute, already alluded to. (Code, sec. 2655.) Under that statute, which is an extension of the statute, 4 Edw. III, ch. 7, *de bonis asportatis*, an action of trespass or trespass on the case may be maintained by or against a personal representative,

not only for the taking and carrying away of goods, but for *any damage to estate*, either done or suffered, by the decedent. It is a remedial statute, and is, therefore, to receive, as the English statute has always received, a liberal construction It requires no very liberal interpretation, however, to extend its operation to the present case. The contract in question, as it is described in the declaration, was property, or specific personal estate. It gave the right, upon the performance of a stipulated service, to receive certain wages, or, in other words, it was a *chose in action*, which is comprehended within the term "estate." The word estate, said the court in *Comegys* v. *Vasse*, 1 Pet., 193, is broad enough to cover every description of vested right and interest attached to and growing out of property. And by this court it has been declared to be among the most comprehensive words in legal terminology. *Williams* v. *Lord & Robinson*, 75 Va., 390; *N. & W. R. R. Co.* v. *Prindle*, 82 Id., 122.

It would be a novel doctrine to hold that a contract, whereby a man secures employment at remunerative wages for the support of himself and family, is not property, or that a violation of such a contract is not damage to his estate. It has been frequently decided that future wages may be legally assigned where there is a present contract imparting to them a potential existence, and if such future wages may be assigned as property, would it not be absurd to deny that the contract itself is property or estate? See *Wade* v. *Bessey*, 76 Me., 413; *Taylor* v. *Lynch*, 5 Gray (Mass.), 49; *Hartley* v. *Tapley*, 2 *Id.*, 565; *Emery* v. *Lawrence*, 8 Cush., 151; 3 Am. & Eng. Ency. of L., p. 237, and cases cited.

The present case is distinguished from *Henshaw* v. *Miller*, 17 How., 212, upon which the appellant relies. In that case, which was an action on the case for a false representation as to the credit of another, whereby the plaintiff was induced to part with his property, it was held that the action died with the person; that the act complained of was not a direct, but

only an indirect, or consequential, injury to the plaintiff's property, and, therefore, not within the statute of Virginia, in which State the case arose. In other words, that it was a mere fraud or cheat, which, although it occasioned loss to the plaintiff, could not be regarded, within the meaning of the statute, as a damage to his estate; and in this view we concur. 3 Rob. (new) Pr., 292, *et seq.*

There is no error, therefore, in the order reviving the action.

2. On the demurrer to evidence, however, the plea of the statute of frauds ought to have been sustained, and judgment given for the defendant. The contract in question was not in writing, and it appears affirmatively that it was not to be performed, and that it was not capable of being fully performed, within a year. The evidence for the defendant shows clearly that it was made in August, 1886, for one year's service, to commence on the first of October next ensuing; and, as this is not in conflict with the plaintiff's evidence, it was not waived by the demurrer to evidence. 4 Min. Insts., 749; *Trout* v. *Va. & Tenn. R. R. Co.,* 23 Gratt., 619; *S. W. Imp. Co.* v. *Smith's Adm'r,* 85 Va., 315.

At the last trial the plaintiff was incompetent to testify, by reason of the death of the defendant's intestate. The defendant, however, introduced several witnesses to prove his (the plaintiff's) statement, as a witness at the first trial, to the effect that the date and terms of the contract were as above stated. This evidence was not objected to, and was clearly admissible. 1 Greenl. Ev., secs. 168, 171. There was no plea, however, of the statute of frauds at the first trial, and the judgment then rendered was reversed here on other grounds.

The plaintiff now seeks to avoid the effect of this evidence, by contending that in November, 1886, just before his discharge by the deceased, there was a new contract. But there is nothing in the record to support this position. The evidence shows that a short while after the plaintiff entered upon his employment, under the contract, the deceased threatened

to discharge him, but afterwards changed his mind, saying he had concluded to keep him, and at the same time ordered him to North Carolina to canvass for trade. This was, obviously, not a new contract, but rather an implied declaration of an intention to fulfill the previous one; and as that was neither in writing, nor to be performed within a year, it followed that no action thereon can be maintained. Code, sec. 2840; 3 Pars. Cont., 36; *Seddon* v. *Rosenbaum*, 85 Va., 928; *Walker* v. *Jackson*, 96 N. S., 424; 1 Smith's Lead. Cas., 580, notes to *Peter* v. *Compton*.

The judgment will, therefore, be reversed, and an order entered here in conformity with this opinion.

JUDGMENT REVERSED.