## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### Joseph M. Silverman et al. v. Marietta Bernot

November 23, 1977.

Record No. 760848.

Present: Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Barbara DuCote Webb (Ken McFarlane Smith; James W. Korman; Kinney & Smith*, on brief), for plaintiffs in error.

*Robert E. Shoun (Robert E. Shoun*, P.C., on brief), for defendant in error.

COMPTON, J., delivered the opinion of the Court.

The statute of frauds provides, insofar as pertinent to this appeal, that no action shall be brought upon any agreement that is not to be performed within a year, unless the promise, contract, agreement or representation be in writing and signed by the party to be charged thereby. Code § 11-2(7). The question we decide here is whether the oral employment contract for personal services involved in this case falls within the foregoing provision of the statute. We think it does not and affirm.

Plaintiff-appellee Marietta Bernot, the employee, sued at law appellants Joseph M. Silverman and Joseph M. Silverman, Inc. (sometimes hereinafter collectively referred to as defendant or employer) seeking damages for wrongful discharge under an oral contract of employment and for anticipatory breach of a pension agreement. The plaintiff asserted that in 1964 she entered Silverman's employ for an agreed period of time extending until she attained age 62 or until his death, whichever should first occur, and that Silverman wrongfully discharged her from such employment to her economic detriment.

The jury returned a verdict in favor of the employee for $50,000, upon which the trial court entered judgment on March 1, 1976. From this judgment order we granted the employer a writ of error, limited to the consideration of the foregoing question.

Stated in the light most favorable to the plaintiff, these are the facts. In 1956, Mrs. Bernot first met Mr. Silverman; she was approximately 41 years of age and he was about 52. At the time,

she owned and operated a millinery shop in Alexandria. He was executive sales director of a life insurance company and president and sole shareholder of defendant Joseph A. Silverman, Inc., a corporation dealing in real estate investments. The parties immediately developed a close personal relationship and each later separated from their respective spouses.

Within several years, Silverman began "inviting" Mrs. Bernot to become his personal secretary and the manager of his office located in the District of Columbia. He represented to her that his annual income was "a hundred thousand dollars" and "that he could do a lot better", which statement she "took with a grain of salt." Accordingly, these offers were initially declined by Mrs. Bernot because she "intended to stay in [her] shop" in order to "get [her two children] through college."

These appeals continued "periodically," with Silverman offering her "marvelous benefits to associate with him." In 1964, when Mrs. Bernot had an opportunity to sell her millinery business, Silverman again asked her "to come to work for him in his office." She was then concerned about "her long term security", and wanted to leave "the intensity of the hat shop". So she sold her business and accepted Silverman's offer.

She testified that Silverman orally promised that if she remained in his employ until she reached the age of 62 or until his death, whichever event occurred first, then she would receive a pension of $300 per month for the remainder of her life and, in addition, would be furnished a residence for the same period of time, all expenses connected with the residence to be paid by him or his estate during the period of her occupancy. The plaintiff's duties involved working full time at defendant's place of business as an office manager and acting as his housekeeper, which included cooking his meals and cleaning his residence. Initially her salary was set at $400 per month, but in 1965 it was increased to $600 per month and remained at that rate until her final termination in June of 1973.

In 1965, Silverman purchased a residence in McLean in the name of the defendant corporation. He, Mrs. Bernot, and her daughter lived there for about two years. During the period, Mrs. Bernot paid rent to the corporation of $200 per month.

In 1967, her employment was terminated by defendant for the first time. She was forced to vacate the McLean residence. She then purchased her own home in Annandale and moved there in

May of 1967. Shortly thereafter, defendant asked plaintiff to resume her employment, stating "he would honor all his commitments" to her. She agreed; thereafter they continued to occupy separate residences.

In 1967, defendant showed her the rough draft of a will which contained a provision that:

> "Marietta Bernot is to receive a life-time income of $300.00 per month. In addition she is to have the life-time right to occupy premises and enjoy all of the furnishings therein, located at [the McLean address] and all expenses of maintenance, taxes, utilities etc are to be paid by the Trustees."

Silverman executed a will in November of 1968 containing the foregoing clause.

During her employment, plaintiff repeatedly asked defendant to inform her about the provisions he had made to secure her retirement benefits and each time defendant answered: "Just trust me". She testified that the execution of the will was "the first tangible evidence that something had been done." Then in 1970, defendant handed plaintiff a bank receipt which indicated that a $50,000 bond had been purchased in her name, although up to the time of trial she had not realized any profit or interest from that security.

In 1972, "[t]he personal relationship" of the parties ended, although she continued in his employ performing the same duties. In December of that year, Silverman assaulted her in his McLean home. In January of 1973, he again struck her in his office during business hours. From January to May of 1973, when defendant underwent major surgery, plaintiff was "fired" on two occasions. Each time, upon his request, she returned because she "was afraid to be out of work" and she "was afraid about losing my benefits with Mr. Silverman".

Then in June of 1973, during an argument in Silverman's home, while she was preparing his evening meal, he again terminated her employment. When he later asked her to "come back," she refused. She testified: "[B]y then I was really afraid of him. I was afraid of his violence. I couldn't go back after that."

Plaintiff, thereafter, attempted to support herself by selling real estate, without much success. So in 1974, she went to Silverman to determine whether "he was going to honor these

commitments." When he refused to do so, this action ensued in November of 1974.

The trial court ruled that the contract of employment asserted by the plaintiff was not required to be in writing. The court, therefore, submitted to the jury, in addition to the issue of damages, the question whether the plaintiff had established the contract (the evidence was in direct conflict, Silverman denying the existence of any such agreement) and, if so, whether defendant had breached it or whether plaintiff had resigned her employment without just cause. The verdict of the jury has, of course, settled the disputed issues of fact and fixed the terms of the contract; remaining for decision is a question of law requiring the construction of the agreement, that is, whether the contract was within the statute of frauds.

Defendants contend, and we agree, that the crucial inquiry is whether this contract could be fully performed on either side within a year from the making thereof.

■ When it appears by the whole tenor of an agreement not in writing that it is to be performed after the first year, then the contract is within the statute and must be in writing. *Seddon* v. *Rosenbaum*, 85 Va. 928, 931, 9 S.E. 326, 327 (1889). But when by its terms, or by reasonable construction, such a contract can be fully performed on one side within a year, although it can be done by the occurrence of some improbable event, as the death of the person referred to, the contract is not within the statute and need not be in writing. 85 Va. at 933, 9 S.E. at 328.

The defendants' position is that this contract is one for a definite duration, *viz.*, until plaintiff reached the age of 62, subject to an express *defeasance*, or termination, *i.e.*, Silverman's death, which may have happened within a year. His death, they contend, would have *ended* the obligations of the parties and would not have *performed* the contract. They argue that the statute "requires no writing for an oral contract that is capable of being performed, not terminated, within a year." They urge that "it is of vital importance to distinguish between promises providing for an alternative form of performance and agreements subject to an express defeasance or cancellation." The "reach" of the statute, continues the argument, "is gauged by the promise intended to be performed and not by those eventualities unrelated to full performance that defeat the contract."

The defendants' analysis of the standards to be employed is close to the mark, but we disagree with defendants' application of those criteria to these facts.

■ We construe the agreement to provide, as plaintiff argues, for alternative performances, that is, we think the parties contemplated that the agreement would be fully performed if either (1) the plaintiff remained in Silverman's employ until she reached the age of 62, or (2) the plaintiff remained in Silverman's employ until his death. Silverman's need and desire to have Mrs. Bernot serve him would have been completely fulfilled if she performed for the duration of his life. Accordingly, since the death of the employer could have occurred within the first year of the agreement, the contract is not within the so-called *"infra annum"* provision of the statute of frauds and need not be in writing.

The distinction between termination (defeasance) by operation of law, as urged by the defendants, and completion by performance, as correctly advocated by the plaintiff, is aptly stated in 2 Corbin on Contracts § 447, at 556 (1950) as follows:

> "[I]n service cases it is generally recognized that termination of duty by operation of law is not identical with performance of a promise. The death of a party may terminate duty; but the contemplated work has not been done. *It is otherwise if the parties have themselves agreed upon the limitation as one of the terms of the agreement that created the duty."* (Emphasis added).

Here the parties have expressly delineated the duration of the contract in terms of the life of the employer, *i.e.,* "the parties have themselves agreed upon the limitation as one of the terms of the agreement . . . ."

The conclusion we reach is not only dictated by the pertinent Virginia decisions, relied on by the plaintiff, but is consistent with the reasoning employed in the cases from other jurisdictions cited by the defendants. In *Seddon* v. *Rosenbaum, supra,* the parties agreed that the defendant would sell the plaintiff 250 shares of stock ' "at the end of 3 years at 96. Stock may be called at 96 at any time before expiration of 3 yrs.' " 85 Va. 929, 9 S.E. at 327. The promise bargained for was the sale of the stock at 96. The alternatives for performance were sale at 96 at the end of three years or sale at 96 upon call within a year.

Thus the contract was held not to fall within the *"infra annum"* provision of the statute. Fulfillment, not annulment, could occur within a year.

In *Thomas* v. *Armstrong*, 86 Va. 323, 10 S.E. 6 (1889), Miss Thomas promised to come and live with Mrs. Rusmiselle and be her servant upon Mrs. Rusmiselle's promise to provide for Miss Thomas' support when she died. In the course of deciding that this oral contract should be enforced, this court said:

> "The contracts contemplated by the statute, are such as, by their terms, are postponed beyond a year; but when the agreement is to be performed upon a contingency, and it does not appear within the agreement that it is to be performed after the year, then writing is not necessary, for the contingency might happen within the year. . . .

> "This contract was fully performed by Miss Thomas, who went to live with Mrs. Rusmiselle, and assumed the position contracted for on her part; its full performance on both sides was not postponed beyond the year, but was contingent upon the death of Mrs. Rusmiselle, which might have happened within the year. It is not, therefore, such a contract as is not to be performed within the year by its terms, and so was not required by the statute to be in writing."

86 Va. at 326, 10 S.E. at 7. *See also Glasgow* v. *Peatross,* 201 Va. 43, 109 S.E.2d 135 (1959).

In contrast, in *Lee's Adm'r* v. *Hill,* 87 Va. 497, 12 S.E. 1052 (1891), a contract not in writing provided for the plaintiff to serve for one year as a solicitor for the defendant's business at a monthly salary of $100. The agreement, made in August to commence the following October, was held to be within the statute because it was made for one year's service and was, therefore, not capable of being fully performed within a year. The parties there had specifically agreed that the employee's promise could only be performed by service for the full one year, a factor which distinguishes that case from the case at bar. In *Hill,* the implied contingency of the employee's death within a year, a circumstance inherent in every employment contract for personal services, would only have terminated the contract and would not have performed it. Here, an express provision dealt with the incident of death (albeit the demise of the employer, not

the employee), which would have resulted in performance, not termination, of the agreement.

Similarly in *Wagniere* v. *Dunnell*, 29 R.I. 580, 73 A. 309 (1909), relied on by the defendants, the agreement held to be within the statute was to employ the plaintiff at a compensation of $50 per week for three years from the date of the contract " 'or for so much of such three (3) years as your results show the ability that you now claim to be able to give me [the defendant].' " 29 R.I. at 581, 73 A. at 310. This was an agreement to employ plaintiff for three years or for so long not exceeding three years as plaintiff demonstrated the ability he claimed to have. Thus the latter alternative could only be fulfilled within a year if the employee failed to perform according to his representations or if either party was unwilling to comply with the contract. There, the alternative could only have been fulfilled within a year upon a breach by one of the parties. But here, Silverman's death, as we have said, would constitute full performance and not a breach.

Likewise, in *Gilliam* v. *Kouchoucos*, 161 Tex. 299, 340 S.W.2d 27 (1960), also relied upon by the employer, an oral contract of employment for the term of ten years was held to be within the statute where it was agreed that " 'this contract and agreement shall, however, terminate on the death of the operator.' " 161 Tex. at 300, 340 S.W.2d at 27. There, the court refused to construe the defeasance provision with reference to death as equivalent to an alternative form of performance, holding that the contract of employment was for a term of ten years to be terminated, not performed, on the death of the operator.

As did the Texas court, we refer to Professor Williston's statement that the thin and technical distinction between the performance of a promise on the one hand, and an excuse for non-performance on the other, implicates the form of the contract as well as its substance. The following illustrations from Williston demonstrate the importance of the contract form:

"1. A promise to serve two years;

"2. A promise to serve as long as the employee lives, not exceeding two years;

"3. A promise to serve two years if the promisor lives so long;

"4. A promise to serve two years, but if the promisor dies the contract shall be terminated.

"It is obvious that all these promises have substantially the same meaning and, if enforceable, the same legal effect; yet certainly the first promise, and presumably the fourth, are within the Statute, while certainly the second and presumably the third are not."

3 Williston on Contracts § 499, at 606 (3d ed. 1960). *See.* Restatement of Contracts § 198, Comment c (1932); Restatement (Second) of Contracts § 198 (Tent. Draft Nos. 1-7, 1973). The Texas court held that *Gilliam* fell within class 4. The Bernot-Silverman contract falls within class 2.

The employer also relies on *Warner* v. *Texas and Pacific Railway Co.*, 164 U.S. 418 (1896). In that case, "it was agreed between the parties that if the plaintiff [who was in the lumber business] would grade the ground for a switch, and put on the ties, at a certain point on the defendant's railroad, the defendant would put down the rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it." 164 U.S. at 418. There, as here, complete performance of the contract depended upon a contingency which might have happened within a year. "If, within a year after the making of the contract, the plaintiff had died, or had abandoned his whole business at this place, or for any other reason had ceased to need the switch for the shipping of lumber, the railroad company would have been no longer under any obligation to maintain the switch, and the contract would have been brought to an end by having been fully performed." 164 U.S. at 434.

For these reasons, the judgment of the trial court will be

*Affirmed.*