## CIRCUIT COURT OF FAIRFAX COUNTY

Telecommunications
Systems Unlimited

    v.

Communications
Satellite Corp.

January 7, 1988

Case No. (Law) 81066

By JUDGE THOMAS A. FORTKORT

This matter is before the Court on defendants' Demurrer to plaintiff's Motion for Judgment. Plaintiff entered into a written twelve-month contract with defendant Telesystems on December 20, 1985, making plaintiff the exclusive dealer for the purchase and resale of defendants' mobile satellite terminals in the Middle East. This contract was extended in writing until January 1, 1987. Plaintiff contends that in mid-January, both parties agreed orally to extend the contract for another twelve months commencing January 31, 1987.

In February and March, members of the defendant corporations met with the owner of Electronic Equipment Marketing Company (EEMCO) to discuss and eventually appoint EEMCO as the exclusive Middle East dealer. On April 16, 1987, COMSAT Technology (which has assumed control of Telesystems) informed plaintiff that its exclusive dealership contract had expired. Plaintiff sues for breach of the alleged oral agreement extending the dealership to January 31, 1988. Defendants demur claiming the suit is barred by the statute of frauds.

*Statute of Frauds*

The Virginia Code contains two statute of fraud provisions § 11-2 and § 8.2-201. Section 11-2(7) states that "no action shall be brought . . . upon any agreement that is not to be performed within a year." The alleged oral agreement was made in mid-January and would have extended the exclusive dealership to January 31, 1988, a period clearly longer than one year. The contingency that the parties may execute a written contract superseding the oral agreement would serve only to terminate the oral contract rather than performing it. Therefore, this possibility would not take the contract out of the § 11-2 statute of frauds. *See Silverman v. Bernot*, 218 Va. 650 (1977).

Section 8.2-201 is the special UCC statute of frauds applying to sales of goods. Defendants present a wealth of authority from other jurisdictions indicating that a contract for an exclusive distributorship which will involve the sale and resale of goods is governed by Article Two of the UCC. Plaintiff, on the other hand, argues that the alleged contract was for marketing and promotional services, therefore not within the scope of Article Two.

Even if Article Two does apply, continues plaintiff, the "admissions exception" in § 8.2-201(3)(b) prevents the defense from being raised by demurrer. Plaintiff refers the Court to *Garrison v. Piatt*, 147 S.E.2d 374 (Ct. App. Ga. 1966), for the proposition that the drafters of the UCC intended that a litigant be given the opportunity to elicit an admission from a defendant through answer and testimony.

The defendant argues that reasoning in the more recent *Triangle Marketing, Inc. v. Action Industries, Inc.*, 630 F. Supp. 1578 (N.D. Ill. 1986), opinion disposes of the *Garrison* arguments. In *Triangle*, the Court opines that such a broad interpretation of the "admissions exception" would virtually do away with the statute of frauds, for at each step in the proceeding a plaintiff may insist he has a right to continue in hopes of eliciting an admission, thus subjecting the defendant to the litigation the statute of frauds was designed to prevent.

To this Court, the purpose of the statute of frauds is to encourage the placing of important matters in writing so that each party to the contract is certain of his duties

and benefits. In the slower-paced world of the nineteenth century, the formality of a written contract was a logical move to place a certain order in the business of man.

When the Uniform Commercial Code came into being, the authors opted for a writing less stringent than a formal contract, a writing from which the court could determine the intent of the parties. This type of writing, less formal than a contract but still capable of binding the parties seemed more suitable to current business practices. A further step occurred when the authors substituted an exception to even the written memorandum, by allowing what this Court would style as admission by the defendant to substitute to some extent for the written memorandum.

Both *Garrison* and *Triangle* are cases dealing with matters of public policy. In *Garrison*, the Court was concerned that provision 8.2-201(3)(b) of the Uniform Commercial Code which this Court had termed informally the "verbal admission" clause, could be defeated by the pleading artifice of a demurrer if sustained, would relieve the defendant of making a possibly damaging admission. One of the great deficits of our otherwise remarkable common law was that sometimes form triumphed over substance. On occasion, the result of the case was determined by the acuity of the counsel in drafting pleadings rather than a fair test of the available evidence. These results ultimately led to the demise of common law pleading, and courts have long held a distaste for legal maneuvers that appear to prevent just results. It is the opinion of this Court that a pleading device that would defeat a code provision is not conducive to public policy.

On the other hand, the plaintiff may defeat any statute of frauds defense by using § 8.2-201(3)(b) as a sword to defeat any statute of frauds motions raised by the defendant on the basis that an in-court admission of an oral contract is always a possibility in the case. The Court in *Triangle* found this a violation of public policy on the basis that the statute of frauds allows a defendant a prompt resolution of a legal dispute, rather than being dragged through prolonged litigation.

In the opinion of this Court, the reasoning in *Garrison* is more persuasive and more conducive to sound public policy. The defendant ought to be at least put to answer the issue raised by the plaintiff. If the litigation con-

tinues beyond that point, the Court in response to an appropriate motion can make the logical decision when it concludes that plaintiff's case lies solely on the mere possibility of an in-court admission by the defendant. The rule in *Triangle* might save some litigation expense. To adopt that rule, however, would defeat a provision of a code specifically adopted to conform to modern business practices and to do away with the harsh results sometimes obtained at common law. On balance, some increase in litigation cost is a fair price to offset the clearly unjust result of allowing a legal pleading to shield the defendant from answering plaintiff's complaint and would signal a return to strict pleading which our current jurisprudence clearly rejects.

Fortunately, it is not necessary to reach the "service/sale of goods" issue or the scope of the "admissions exception" in deciding whether this action is barred by the statute of frauds. The alleged oral agreement clearly falls within the provisions of § 11-2(7). The only matter remaining to be resolved is whether a demurrer is an appropriate avenue for raising the defense. The choice is between a demurrer and a special plea in bar. While statute of frauds defenses commonly appear as special pleas, there is nothing in Virginia law prohibiting the defense from being raised as a demurrer. In *Matthews v. Hileman*, 11 Va. L. Reg. 46 (1905), the Circuit Court of Botetourt County faced a similar question. That Court gave particular attention to the pleadings. If the declaration did not affirmatively state that the alleged contract was not in writing, then a demurrer should be overruled. However, if the pleadings set forth an oral agreement which Virginia law requires to be in writing, then a demurrer raising the statute of frauds may be sustained. *Id.* at 48. Furthermore, as recently as 1985, the Virginia Supreme Court affirmed a demurrer based on a provision of the § 11-2 statute of frauds. *See Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671 (1985). From these cases, the conclusion may be drawn that a statute of frauds defense raised by a demurrer is not premature and may be properly sustained by the Court.