## CIRCUIT COURT OF THE CITY OF RICHMOND

Jennifer Wade et al.

·v.

Foreign Mission Board
of the Southern Baptist Convention

October 2, 1990

Case No. LM-1104-4

By JUDGE T. J. MARKOW

These cases are before the court on defendant's renewed motions to strike the evidence, which were taken under advisement after the close of the plaintiff's evidence and again after the close of all the evidence, to set aside the verdict and to grant a new trial. The appropriate standard for review of the evidence to be applied at the trial level is the same as that set forth by the Virginia Supreme Court for appellate review in *Matney v. Cedar Land Farms*, 216 Va. 932, 224 S.E.2d 162 (1976). The evidence must be examined to determine whether it can sustain the verdict, giving the prevailing party the benefit of all substantial conflict and of all fair inferences that may

be drawn from the evidence. *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 280, 377 S.E.2d 589, 590 (1989).

The plaintiffs are four siblings, the children of Diana Wade and her husband, Thomas, who were missionaries of the Foreign Mission Board of the Southern Baptist Convention. In preparation for missionary service, Mrs. Wade testified that in April 1976, they attended an orientation session during which the Board verbally promised to do what they could "within their resources" to protect the health, welfare, and safety of Mrs. Wade and her children. She claims that she would not have entered mission service without such an assurance. On November 4, 1976, a certificate of appointment was issued naming Mrs. Wade as a missionary. At some point thereafter, she was provided with a Manual for Missionaries which set forth policies and practices of the Board in its dealings with appointees. The manual was regularly changed and updated by furnishing new loose-leaf pages to replace outdated ones.

The Wades were sent to various African countries and were accompanied by their four minor children. Sometime in 1979 or 1980 while the family was still in Africa, Mr. Wade began to sexually abuse the oldest child, his daughter, the plaintiff, Renee, who was then ten years old. This abuse continued during a one-year furlough the family took to the United States during 1981-1982.

Shortly after their return to Africa, arrangements were made for Renee to attend a school in Johannesburg, located approximately 700 miles from Maun, Botswana, where the Wades were then stationed. Mrs. Wade testified that Dr. Marion G. Fray, Jr., the Board's Associate Director of Southern African Missions, represented to the Wades that he would personally look after Renee's health, welfare, and safety while she was in Johannesburg. Dr. Fray subsequently learned from Renee that her father had sexually molested her. She was advised at that time not to inform her mother, as this would end her father's career and ruin their marriage. Never having been confronted with this type of problem, Dr. Fray sought the advice of a psychiatrist and a friend who had great experience in pastoral counseling.

Dr. Fray confronted Mr. Wade with that information and told him that he would have to get counseling and inform Mrs. Wade. Wade conceded his transgression but

made light of it. Initially, Wade agreed. Dr. Fray set up counselling, but upon further reflection, Mr. Wade called Dr. Fray and told him he could not enter counseling or tell his wife. Dr. Fray informed Dr. Davis Saunders, another Board employee, who is located in Richmond, of Renee's charges, but neither of them informed Mrs. Wade. The Wades' appointments in the mission ended shortly thereafter without any counselling. Dr. Fray did not advise Mrs. Wade of the information that he had received.

At some time after Renee spoke with Dr. Fray, Mr. Wade began abusing his two younger daughters.

The family left Africa in 1984 and eventually moved back to their original home in Alaska. They did not serve as missionaries thereafter, although they did not formally resign as missionaries. In June, 1985, Mrs. Wade found out about the molestation through her sister and immediately had Mr. Wade arrested.

Originally, the plaintiffs alleged causes of action based on both contract and negligence theories. Through pretrial demurrers, motions, and instructions, the negligence counts were dismissed, and the case went to the jury only on the breach of contract theory. The jury found for the plaintiffs, awarding $350,000 each to Renee and Jennifer, the two oldest girls, $850,000 to Tanya, the youngest daughter, and $10,000 to Trey, the Wades' only son.

The defendant Board identifies the following issues upon which it contends it is entitled to relief from judgment:

(1) There is no enforceable contract in light of the Virginia statute of frauds, Va. Code Ann. § 11-2(8).

(2) Even if there was an enforceable contract, recovery is barred by the Virginia statute of limitations.

(3) Even if there was an enforceable contract, the scope of the contract cannot be construed to permit recovery under the facts of this case.

(4) Assuming there was an enforceable, properly construed contract, the court incorrectly instructed the jury on the measure of damages recoverable for breach of contract.

The court will address the issues in the order presented.

## I. Does the Statute of Frauds Bar Enforceability of Any Contract Between the Wades and the Board?

The statute of frauds provides that "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . upon any agreement that is not to be performed within a year." Va. Code Ann. § 11-2(8) (Cum. Supp. 1990). Therefore, if there is not a contract which satisfies the statute, the cause of action is barred.

Whether the contract on which Mrs. Wade relies is the oral or written one is a source of some confusion. Her counsel has argued that both a written and an oral contract exist and has been understandably reluctant to identify which he is referring to at any given time, maximizing the options. It is clear from the jury's verdict that it found a contract to exist, but it is not clear whether that verdict was based on an oral or a written contract. Nevertheless, the court finds that there was no written contract supporting the claim of the plaintiffs.

The court, then, will examine the oral contract and whether it satisfies the statute. If one exists, the oral contract was made when, as Mrs. Wade claims, she was induced to enter upon missionary service by the promise made by the Board at the orientation session in April, 1976, that the Board would "protect the health, welfare, and safety of the Wade family." This was not written, nor is there any memorializing of such a promise sufficient to bring it within the statute of frauds. Additionally, Dr. Fray's promise that he would look after the health, safety, and welfare of Renee while she was in Johannesburg could have been found by the jury to have been an oral contract so far as Renee is concerned. The rationale here is inapplicable to this contract, as Renee was to be in Johannesburg for educational purposes more than one year (three years). It would be barred by the Statute of Frauds and is not part of the court's findings here.

The Board attempts to analogize these contracts to oral contracts in which employers have undertaken not to dismiss employees without "just cause." This court in *Hahn v. Va. Farm Bureau Mut. Ins. Co.*, 15 Va. Cir. 168,

172 (1988), concurring with the reasoning in *Windsor v. Aegis Services*, 691 F. Supp. 956 (E.D. Va. 1983), held that an oral "just cause" employment contract violated the statute of frauds, as it could not be performed within a year.

The plaintiffs argue that the Wade contract is not a just cause contract, that it is an "at will" contract and as such is like that discussed in *Silverman v. Bernot*, 218 Va. 650, 654, 239 S.E.2d 118, 121 (1977):

> [W]hen by its terms, or by reasonable construction, such a contract can be fully performed by one side within a year, although it can be done by the occurrence of some improbable event, as the death of the person referred to, the contract is not within the statute and need not be in writing.

The plaintiffs are correct in that the Wade contract was an "at will" contract that the Foreign Mission Board or the Wades could have terminated at any time without reason, for cause, or no cause at all. *See Silverman, supra*; *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

Defendant argues that the contract could not have been performed within a year and had to be in writing to be enforceable. It cites as support for its position the court's decisions in *Hahn v. Va. Farm Bureau Mut. Ins. Co.*, 15 Va. Cir. 168 (1988), and *Windsor v. Aegis Services*, 691 F. Supp. 956 (E.D. Va. 1983). These were cases in which the plaintiffs were employees suing employers alleging that their oral contracts of employment permitted their being terminated only for a showing of "just cause." In each case the court sustained pleas of the statute of frauds on the theory that a "just cause" contract cannot be performed within one year. The possibilities of death or termination for good cause within a year are excuses for nonperformance or breaches, not incidents of performance. Citing long-standing authority, the Supreme Court has stated that, "We have long held that a contract to furnish services or a contract of employment for an indefinite period is, upon reasonable notice, terminable at will by either party." *Wards Co. v. Lewis & Dobrow, Inc.*,

210 Va. 751 (1970); Marshall and Wicker, *The Statutes of the At-Will Employment Doctrine in Virginia After Bowman v. State Bank of Keysville*, 20 U. Rich. L. Rev. 267 (1986).

This case is fundamentally different, however. The Wade contract was an "at will" contract. It could have been terminated for any or no reason by either side at any time. Upon termination, the contract would have been fully performed. In *Hahn* and *Windsor* the plaintiffs asserted that their contracts contained a term defining its duration; i.e., until there was good cause to terminate. *Norfolk Southern Railway Co. v. Harris*, 190 Va. 966 (1950). In other words, in the "good cause" cases plaintiffs plead that, "I had an oral contract, one of the terms of which was that I would not be terminated except for good cause." By claiming the "termination only for good cause" provision, the plaintiffs converted "at will" contracts to contracts with a definite term that could not be performed within one year and were required to be in writing. Here there is no evidence whatsoever establishing a length of time for performance of the contract; therefore, this was an "at will" contract and not required to be in writing.

While there is no Virginia case which has determined whether an at-will contract can be performed within one year, it is a contradiction in terms to say that the parties have contracted for an indefinite period but that period must be more than one year. What the parties to an at will contract are saying is that, "Each of us will perform as promised so long as both of us wish to continue performance." An element of the performance of that contract is that full performance may be accomplished at any time after the first day or after thirty years. It is a contract without length of time as one of its essential terms. Here termination at whatever time or for whatever reason is not a breach or an excuse for nonperformance, it is full performance. It can be performed within one year; accordingly, the statute of frauds is inapplicable.

Having decided that the contract is not within the statute of frauds, there is no need to address the issue of performance or estoppel.

## II. *Does the Statute of Limitations Bar Enforcement of the Contract?*

The second issue raised by the defendant is whether the Virginia statute of limitations bars recovery on the contract. The short answer is no.

The plaintiffs are correct in arguing that the defense of the statute of limitations must be raised as an affirmative defense "specifically set forth in a responsive pleading." Va. Code Ann. § 8.01-235 (Repl. Vol. 1984). The defendant did not so plead and thus has waived any objection based on the statute of limitations; however, this is a moot point, as the cause of action would not have been barred at any rate. Va. Code Ann. § 55-22 is a real-party-in-interest statute, giving the Wade children, as intended third-party beneficiaries, the right to maintain their own causes of action. *See* 17 Am. Jur. 2d, *Contracts*, sect. 312 (1989). Section 8.01-229 of the Code tolls the running of the statute until the disability of their infancy is removed. The statute of limitations is no defense to any of these actions.

## III. *Has the Court Properly Construed the Scope of the Contract?*

The Board maintains that the contract's undertakings were "simply to look after the health, welfare, and safety of the Wade family while in Africa and to look after Renee while she was in school in Johannesburg," and that what was required by those promises is a question of construction for the Court.

The Supreme Court said in *Richmond, Inc. v. Ewing's Sons*, 200 Va. 593, 596, 106 S.E.2d 595, 597 (1959), that while ordinarily it is the duty of the court to construe a clear and unambiguous written contract:

> [W]hen a contract is ambiguous, it is necessary to resort to parole evidence to ascertain the exact intention of the parties. This is especially true when no formal written contract has been entered into by the parties. In such cases, the meaning of the contract upon the evidence

should be submitted to the jury if reasonable men might draw different conclusions therefrom.

This was such a contract, it was submitted to the jury, and the jury drew the conclusion that those promises included taking steps to protect the Wade children from their own father, once the Board was informed that he was hurtful to them. Reasonable people may, and probably do, differ on this construction, but it was decided by a duly selected and sworn jury. Their verdict is entitled to a presumption of validity. It may not be set aside unless it is plainly wrong or without credible evidence to support it. *Lane v. Scott*, 220 Va. 578, 260 S.E.2d 239 (1979), *cert. denied*, 446 U.S. 986 (1980). This court does not find that the jury was plainly wrong in their construction of the contract.

IV. *Did the Court Correctly Instruct the Jury of the Measure of Damages Recoverable for Breach of Contract?*

Instruction 11 given by the court instructed the jury that it might consider consequential damages such as past and future medical expenses, inconvenience, pain, suffering and mental anguish, the loss of enjoyment of life in the past and future, and injuries both mental and psychic which the plaintiffs suffered as a proximate cause of the breach of contract. It is the Board's position that the jury should not have been allowed to consider any of those elements, as the molestation of the children was not within the contemplation of the parties at the time of contracting.

There are two categories of damages recognized for breach of contract. The first is direct damages, which arise "naturally" or "ordinarily" from a breach. They are those which human experience recognizes can be expected to result. The second is consequential damages, "those which arise from the intervention of 'special circumstances' not ordinarily predictable." *Roanoke Hospital v. Doyle and Russell*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975) (citing 5 A. Corbin, *Contracts* § 1012(89) (1964)).

It is a question of law for the trial court whether claimed damages are direct or consequential. The distinction is significant in that consequential damages are only

recoverable if they were within the contemplation of the parties at the time of entering the contract. Whether they were contemplated, so as to justify recovery, is a question of fact for the jury, assuming there is evidence to support a finding. *Id.*; *see also Richmond Medical Supply v. Clifton*, 235 Va. 584, 587, 369 S.E.2d 407 (1988).

The court correctly identified the claimed damages which were enumerated in Instruction 11 as consequential damages in Instruction 10, which also explained that the jury must find "the parties when they made the contract contemplated that, because of circumstances known to them, a breach of the contract might cause such consequential damage."

It is apparent from the jury's verdict that their evaluation of the evidence led them to the conclusion that the parties did contemplate those " 'special circumstances' not ordinarily predictable," *Roanoke Hospital*, 215 Va. at 801, 214 S.E.2d at 160, in their contract for the protection of the health, safety, and welfare of the Wade family. The plaintiffs are correct in their assertion that it would be absurd to suggest the necessity to specify each and every hazard contemplated by those terms. The issue whether consequential damages were contemplated by the parties must be considered from the time the parties entered their contract. On this evidence, the jury found that there was a contract that the Board would do its best to protect the health, safety, and welfare of the Wades. Reasonable people could conclude that breach of the agreement would result in consequential damages. When safety, health, or welfare are not protected, adverse consequences are likely to result. It is not necessary that the parties anticipated specific consequences of specific breaches. The instruction was not in error.

Having examined the issues which the defendants identified giving the prevailing party the benefit of all substantial conflict and of all fair inferences that may be drawn from the evidence, the court concludes that the jury's verdict must be left undisturbed.