## CIRCUIT COURT OF ROANOKE COUNTY

Ralph K. Grant,
Administrator
of the Estate of
Cherry Katherine Grant,
deceased

v.

Charles O. Grant et al.

June 15, 2005

Case No. CH02-580

BY JUDGE ROBERT P. DOHERTY, JR.

This chancery cause was filed by the estate administrator, he being one of the heirs-at-law, against the thirteen remaining heirs-at-law in order to obtain court approval to sell estate real property. During the course of the lawsuit, it was discovered that a contest existed concerning the ownership of certain farm equipment that was claimed by both the decedent's estate and by one of the heirs-at-law. This being a matter in which the Court's equity jurisdiction enabled it to grant complete legal and equitable relief, the case was expanded to include the personal property dispute.

Charles, the oldest son of the Decedent, testified that after he returned home from the army in the mid 1970s, he entered into an oral agreement with his parents and his oldest sister to provide specific lifetime assistance to his mother and father on their farm. He felt this was necessary because his father had been struck with a debilitating illness. In return for this assistance, he was to receive the use of his parent's farm equipment during their lifetime and the ownership of it when no one else in the family needed to use it. Other

members of the family were also allowed to use the equipment. Charles is the last of the brothers and sisters who still farms. The tractors were stored on the parent's farm part of the time and on Charles' property the rest of the time. Most of the accessories were kept at Charles' residence. Over the years, Charles repaired and maintained all of the equipment, buying parts and petroleum products out of his own pocket. This equipment is now in excess of 35 years old and one of the tractors has not even been started since 1967.

Pursuant to this oral agreement, Charles built an addition to his older sister's house so that his parents would have a place to live while their new home was being constructed. He then dug and poured the basement and foundation for their new house, installed the plumbing and electricity, and generally did all of the preparation necessary for the modular home to be installed on his parent's farm. After its completion, he assisted his parents to move into their new home. That was when he began using his parent's farm equipment to prepare their garden and harvest it for them. He continued these duties annually, even after his father died in 1986, and through and until the time his mother went into the hospital during her last illness. At that time, the only other relative who lived nearby and occasionally used the farm equipment was Charles' youngest brother, Ralph. Charles asked him if he ever intended to use the farm equipment again, and Ralph told him that he did not. Charles then took the position that the ownership of that personal property had finally transferred to him. Since then, Charles has purchased the family farm from the estate, where his son now resides, and where the majority of the contested farm equipment is currently located.

The position of Ralph, the Plaintiff estate administrator, is that the original bills of sale for the majority of the equipment show that it was purchased by his father and, pursuant to his father's will, inherited by his mother. Ralph testified that he was not aware of any agreement to transfer its ownership to his older brother, Charles. He further testified that the equipment normally stayed on the family farm, and he therefore believes it to be part of their mother's estate. Charles countered Ralph's assertion that he was not aware of any such agreement by pointing out that Ralph was not even born when Charles was discharged from the army and that he was a baby when the agreement was made.

### Dead Man's Statute

Upon consideration of the evidence and of the arguments of Counsel, the Court finds that a contract for the transfer of ownership of the farm equipment, based on a contingency, did exist as alleged by Charles. The granting of a

decision in his favor is not in violation of the "Dead Man's Statute," § 8.01-397, Code of Virginia (1950), as amended, because such a decision or judgment is not based solely on the uncorroborated testimony of Charles as an adverse party. Instead, his testimony is corroborated in part by the receipts submitted for parts and petroleum products he purchased and used over the years to maintain and repair the contested equipment. It is also corroborated in part by the testimony of the other witnesses indicating that both Charles and Ralph used the equipment as needed over the years. This evidence "tends to confirm and strengthen the testimony of the witnesses sought to be corroborated. . . ." *Varner v. White*, 149 Va. 177, 185 (1927). The facts and circumstances surrounding the actions of the parties in this case, as related by the witnesses, "amounts to more than a scintilla of evidence, and they give strength to and tend to produce belief and confidence in the truth of the testimony of the defendant." *Brooks, Administrator v. Worthington*, 206 Va. 352, 358 (1965). Accordingly, the existence of the contract is established, and it is found not to be on contravention of the Virginia Dead Man's Statute.

### Statute of Frauds

The final issue raised by the parties questions whether the oral contract violates the Statute of Frauds, § 11-2(8), Code of Virginia (1950), as amended, in that the contract was one that "is not to be performed within a year." While it is true that the terms of the agreement extended over an approximate thirty year term, partial performance of the contract by the party seeking to avoid the bar of the Statute of Frauds, when that partial performance is "consistent with no other theory other than the existence of the alleged oral contract," is sufficient to defeat such a defense. *Williams v. Heller Brothers Realty*, 229 Va. 55, 57 (1985). The actions of Charles over the intervening approximately thirty years of building an addition onto his sister's house for his parents to live in; digging and pouring the basement and foundation for their new house; installing the plumbing and electrical wiring; helping them move; planting and harvesting their garden annually; and repairing and maintaining the farm equipment out of his own pocket more than constitutes the requisite performance.

In addition, although improbable, it is possible that the contract could have been performed within a year. "[W]hen the agreement is to be performed upon a contingency, and it does not appear within the agreement that it is to be performed after the year, then writing is not necessary, for the contingency might happen within the year." *Silverman v. Bernot*, 218 Va. 650, 656 (1977). Since the oral agreement could have been performed within a year, it was a

valid and enforceable contract, not subject to the dictates of the Statute of Frauds. Charles fulfilled his end of the bargain, the contingency occurred, and the ownership of the contested farm equipment transferred to him prior to the death of his mother. The farm equipment is not part of the Decedent's Estate.