SHEDD, Circuit Judge,
dissenting:
I disagree with the majority’s conclusion that the oral agreement in this case is not within the Virginia statute of frauds. See Va.Code Ann. § 11-2(8) (no action may be brought on an oral contract if the contract is based on an “agreement that is not to be performed within a year”). The Supreme Court of Virginia has explained that when “it appears by the whole tenor of an agreement not in writing that it is to be performed after the first year, then the contract is within the statute and must be in writing.” Silverman v. Bernot, 218 Va. 650, 239 S.E.2d 118, 121 (1977). However, when “by its terms, or by reasonable construction, such a contract can be fully per *699 formed on one side within a year,, although it can be done by the occurrence of some improbable event, ... the contract is not within the statute and need not be in writing.” Id.
Looking at the “whole tenor” of the oral contract, as described by Mr. Riad, it clearly falls within § 11-2(8). Formed in June 2011, the contract obligated both parties to perform through the end of 2012, some 18 months later. Specifically, the contract obligated Blue Sky to purchase airline tickets at ATG’s request through the end of 2012, and it obligated ATG to share its profits with Blue Sky at the end of 2012. The contract did not contain any contingency that, upon its occurrence, could constitute full performance before the 18-month period expired. Therefore, there is simply no way that either party could fully perform its obligations within one year of June 2011.[1]
Finding to the contrary, the district court interpreted Virginia law in an extraordinary manner, stating that if a court could “conjure up some contingency, no matter how improbable, that would allow either Blue Sky or ATG to completely perform all of its contract obligations within one year of June 2011,” then the oral agreement is not within the statute of frauds. J.A. 1809 (emphasis added). The court then concluded that because, within one year of June 2011, the Ministry could have stopped ordering airline tickets from ATG or the Ministry contract with ATG could have been terminated, either Blue Sky or ATG “might have completed their performance under their contract” during that period. J.A. 1310. In affirming the district court’s decision, the majority asserts that Blue Sky could have fully performed its contractual obligations by purchasing a single airline ticket within one year of June 2011.
The district court and the majority misread Virginia law. In Silverman, upon which the majority primarily relies, the state supreme court held that the oral employment contract was not within the statute of frauds because it was capable of being performed by either party within one year; however, the court did not adopt a standard allowing for any contingency to be “conjured up” to remove a contract from the statute. Instead, the court concluded that the contract itself provided for “alternative performances, that is, ... the parties contemplated that the agreement would be fully performed if either (1) the plaintiff remained in Silverman’s employ until she reached the age of 62, or (2) the plaintiff remained in Silverman’s employ until his death.” 239 S.E.2d at 121. The court reasoned that because “the death of the employer could have occurred within the first year of the agreement,” the contract was not within the statute of frauds. Id. In reaching this conclusion, the court specifically emphasized the distinction in service-contract cases between the termination of a contract by operation of law *700 and by completion of performance, and it noted that the termination of a party’s contractual duty is not the same as a party’s full performance of the contemplated work. Id. at 121-22.[2]
The court reiterated this point in Falls v. Virginia State Bar, 240 Va. 416, 397 S.E.2d 671 (1990), in which it held that the ' oral employment contract, which was indefinite in duration but contingent on the employee’s satisfactory performance, was within the statute of frauds. The court rejected the employee’s argument that the contract could be fully performed within one year because he could have died, resigned, or been discharged for cause during that period. Applying Silverman, the court explained that “[although occurrence of any of the three contingencies ... would have terminated [the employee’s] performance during the first year of his employment, the parties’ contract did not expressly provide that the occurrence of any of these contingencies would constitute full performance.” Id. at 672-73. Continuing, the court noted that because the contract “contains no such provision providing for full performance in the event of those contingencies, the statute of frauds is applicable.” Id. at 673.
As noted, the oral contract in this case obligated the parties to perform for a period of 18 months, and it did not contain a contingency that, upon its occurrence, would have constituted full performance. Thus, like the contingencies in Falls, the contingencies conjured up by the district court might have terminated Blue Sky’s performance under the oral contract, but they would not have led to the “full per-' formance” contemplated by the parties when they made the contract. See also Lee’s Adm'r v. Hill, 87 Va. 497, 12 S.E. 1052 (1891) (holding that an agreement for one year’s service, made in August and to commence in October, was within the statute because the employee’s promise could only be performed by service for the full year).
Moreover, although Blue Sky’s purchase of any airline tickets during the 12-month period after June 2011 would constitute partial performance of Blue Sky’s contractual obligations, partial performance is insufficient to remove this contract from' § 11-2(8). Because Blue Sky was contractually obligated to purchase tickets at ATG’s request until the end of 2012, it could not fully perform its obligations within one year after June 2011. See generally Southern States Life Ins. Co. v. Foster, 229 F.2d 77, 81 (4th Cir.1956) (“Until the arrival of each of those months, the'waiver for that month could not be tendered; until then, neither the appellant, nor the appellees, could perform their agreement for that month....”); Martocci v. Greater N.Y. Brewery, Inc., 301 N.Y. 57, 92 N.E.2d 887, 889 (1950) (“The endurance of defendant’s liability is the deciding factor. The mere cessation of orders from Lorillard to defendant would not alter the contractual relationship between the parties; it would not constitute performance; plaintiff would still be in possession of his contractual right, though it may have no monetary value, immediately or ever.”).
For these reasons, I believe that the oral contract is within the statute of frauds. Accordingly, the defendants are *701 entitled to judgment as a matter of law.[3]

. The "whole tenor” of the oral contract makes clear that the parties contracted for Blue Sky to purchase airline tickets at ATG’s request until the end of 2012. Among other things, Mr. Riad testified that ATG handled approximately "$120 million a year” in United States tickets for the Saudi Ministry, and that Dr. Al-Tayyar told him that his profit "would be between 5 to 6 million.” J.A. 829. See Rizoti v. Plemmons, 91 Fed.Appx. 793, 796-97 (4th Cir.2003) (holding that testimony regarding the anticipated duration of the agreement established that the defendant’s performance would extend beyond one year). Moreover, Mr. Riad testified that he kept his business open until January 18, 2013, "after the last student used his ticket.” J.A. 841. See Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co., 386 F.3d 581, 598 (4th Cir.2004) (noting that “courts commonly look to evidence of the course of dealing ... in assessing ambiguous contract terms”).

. The district court and the majority read too ’ much into the Silverman court’s statement that the occurrence of an improbable .event can constitute a party’s full performance of an oral agreement. Certainly, an improbable event may lead to a party’s full performance, but the event itself must be expressed in the contract.

. Although unnecessary for my. resolution of this appeal, I agree that the district court abused its discretion regarding spoliation of evidence. The magistrate judge applied an incorrect, overly broad standard, and the district judge applied an excessively prejudicial evidentiary presumption during the damages proceeding.