# John T. Falls

## v.

# Virginia State Bar, et al.

Record No. 900212

November 9, 1990

Present: All the Justices

*Jay J. Levit (Levit & Mann,* on briefs), for appellant.
*Gregory E. Lucyk, Senior Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General,* on brief), for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this case, the principal issue is whether a provision of the statute of frauds bars enforcement of an employment contract that was to continue as long as the employee's job performance was satisfactory. At the time the alleged contract was made, and when the case was tried, the applicable portion of the statute of frauds provided that "[n]o action shall be brought . . . [u]pon any agreement that is not to be performed within a year . . . [u]nless the . . . contract . . . or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent." Code § 11-2(7) (1988 Repl. Vol.).[1]

On December 14, 1988, John T. Falls brought this action against the Virginia State Bar (the Bar) and Edward J. Mazur, Comptroller of the Commonwealth,[2] to recover damages for breach of an employment contract. On November 20, 1989, concluding that the statute of frauds barred enforcement of Falls' contract, the trial court sustained the defendants' demurrer to Falls' amended motion for judgment, and dismissed the amended motion for judgment with prejudice. Falls appeals.

Because the case was decided on demurrer, the Bar "admits the truth of all material facts that are properly pleaded. According to this rule, the facts admitted are those expressly alleged, those which are impliedly alleged, and those which may be fairly and justly inferred from the facts alleged." *Elliott* v. *Shore Stop, Inc.,*

---

[1] Code § 11-2(7) has been revised without substantial change and is now Code § 11-2(8).

[2] Mazur was made a party to comply with the provisions of Code § 2.1-223.1. It provides for presentation to the Comptroller of pecuniary claims against the Commonwealth whenever the claimant cannot identify the act or omission giving rise to the claim "with any single department, division, institution or agency of the Commonwealth."

238 Va. 237, 240, 384 S.E.2d 752, 753 (1989). Consistent with this principle, we summarize the material portions of Falls' motion for judgment and its attachment, incorporated by reference in the motion for judgment.

In March 1986, prior to his employment by the Bar, Falls was employed by a third party. His salary, tenure, and job benefits in that position were not disclosed in the pleadings. In negotiations leading to his employment as the Bar's Director of Administration, authorized representatives of the Bar interviewed Falls and assured him that if he accepted the job, his employment would continue as long as his performance was satisfactory. During these negotiations, Falls was given a copy of the Bar's personnel manual, upon which he relied as further evidence of his job security. Relying upon these oral assurances and the personnel manual, Falls resigned his existing employment and, effective April 1, 1986, accepted employment by the Bar.

Although his work was satisfactory, Falls was discharged without cause on January 4, 1988, effective February 19, 1988. A Bar representative told Falls that he was being discharged because the Bar could hire "lower-line employees" to perform his duties at lower cost.

On appeal, Falls makes several arguments to support his claim that the trial court erred in its application of the statute of frauds. At the outset, Falls argues that we need not consider the merits of the statute of frauds' defense because the defendants are estopped from pleading the statute. However, the State Bar, as an administrative arm of the Court, Code § 54.1-3910, is a state agency. *Goldfarb* v. *Virginia State Bar*, 421 U.S. 773, 789-90 (1975). Because it is a state agency in the performance of a governmental function, estoppel does not apply to the State Bar. *See Gwinn* v. *Alward*, 235 Va. 616, 621, 369 S.E.2d 410, 413 (1988).

Therefore, we turn to Falls' remaining contentions. First, he argues that the statute is inapplicable because his employment contract was capable of being fully performed within its first year upon the occurrence within that period of any one of the following events: his death, resignation, or discharge for cause. We referred to these contingencies in *Silverman* v. *Bernot*, 218 Va. 650, 239 S.E.2d 118 (1977). *Silverman* involved an oral contract of employment that provided for retirement benefits if a 41-year-old employee continued her employment (1) until she reached the age of 62, or (2) until the employer's death. There, because by its

terms the contract *would have been fully performed* if the employer died within its first year, we held that it was not within the statute of frauds and, therefore, the employee could enforce the oral contract.

■ In deciding *Silverman,* we drew a distinction between *termination* of a contract by operation of law and its *completion* by performance:

"[I]n service cases it is generally recognized that termination of duty by operation of law is not identical with performance of a promise. The death of a party may terminate duty; but the contemplated work has not been done. *It is otherwise if the parties have themselves agreed upon the limitation as one of the terms of the agreement that created the duty.*"

*Id.* at 655, 239 S.E.2d at 121-22 (quoting 2 A. Corbin, *Corbin on Contracts* § 447, at 556 (1950)) (emphasis added).

■ Although occurrence of any of the three contingencies mentioned by Falls would have terminated his performance during the first year of his employment, the parties' contract did not expressly provide that the occurrence of any of these contingencies would constitute full performance. Absent · such an agreement, upon occurrence of any of those contingencies, Falls' contract would end, not by performance, but by termination. The contract would terminate by operation of law upon Falls' death or resignation, *id.* at 656-57, 239 S.E.2d at 122, and it would terminate by breach upon his discharge for cause. *Id.* at 657, 239 S.E.2d at 122-23. Because Falls' contract contains no such provision providing for full performance in the, event of those contingencies, the statute of frauds is applicable.

■ Falls further contends that his employment contract complies with the statute of frauds because the Bar's personnel manual was a part of the contract and bore the Bar's logo. According to Falls, the use of the logo satisfied the statute's requirement of a signature "by the party to be charged." Assuming, but not deciding, that the manual stated the essential terms of the job-security agreement that Falls alleges, Falls cites, and we find, no cases which support his contention that use of a logo under these circumstances meets the statutory requirement that the document be "signed by the party to be charged." In dealing with the requirement of a signature to comply with the statute of frauds, we said

that "a signing consists of both the act of writing a person's name and the intention, in doing this, to execute and authenticate the instrument signed." *Sutherland* v. *Munsey*, 119 Va. 791, 796, 89 S.E. 882, 883 (1916).

*Troyer* v. *Troyer*, 231 Va. 90, 94-95, 341 S.E.2d 182, 185-86 (1986), relied upon by Falls, is inapposite. There, a litigant, testifying by deposition, described the contract in his testimony and expressly authorized the notary to sign his name to the deposition. Under those circumstances, we held that the deposition constituted a memorandum sufficient to satisfy the requirements of the statute of frauds. In this case, however, no representative of the Bar signed the document, and there was nothing to show that the Bar had the logo printed on the manual with the intent to adopt the logo as its signature. Therefore, we conclude that the logo did not constitute a signature by the Bar.

For all the foregoing reasons, the judgment of the trial court will be

*Affirmed.*