## CIRCUIT COURT OF ALLEGHANY COUNTY

Persinger & Co.

v.

Michael D. Larrowe

April 13, 1994

BY JUDGE DUNCAN M. BYRD, JR.

This matter was heard by the Court on March 22, 1994. At the conclusion of the evidence, the Court took the matter under advisement pending a review of the law and evidence. The Court has now done so.

The plaintiff, Persinger & Co. ("Persinger") seeks a declaratory judgment that the defendant, Michael D. Larrowe, is bound by the terms of Persinger's General Partnership Agreement. Specifically, Persinger seeks a declaratory judgment that Larrowe is bound by the covenant not to compete contained in Article 24 of the General Partnership Agreement.

Persinger is a general accounting firm which does business in Virginia and West Virginia. The firm is owned and governed by its general partners. Larrowe joined Persinger as a staff accountant on January 2, 1980, and was employed in the firm's Galax office until 1983. In 1983, Larrowe transferred to the firm's Beckley office. In 1985, while he was employed in the Beckley office, Larrowe was promoted to "office partner." In connection with his promotion, Larrowe executed an "Office Partner Non-Competing Agreement" on November 1, 1985. That agreement stated that Larrowe agreed "to be bound by the same terms of the limitations imposed on a former general partner as set forth in Article 24.1 of the general partners' partnership agreement . . . ." Article 24.1 of the General Partnership Agreement provides:

> *Limitations Imposed on Former Partner*. When a party to this agreement ceases to be a partner, whether by reason of with-

drawal or retirement, he will observe the following limitations. For a period of three (3) years immediately following the date he ceases to be a partner, or while he is receiving guaranteed payments from the partnership, he shall not directly or indirectly render public accounting services to any clients who were serviced by the partnership as [sic] date of his withdrawal or retirement. A partner violating this paragraph shall pay to the partnership an amount equal to one-third (1/3) of each year's fee as collected for a period of three (3) years. Such amount is due within thirty (30) days after it has been collected from the client by the former partner.

Although Larrowe was highly regarded by Persinger, Larrowe left Persinger to join a North Carolina accounting firm in April of 1987. Nonetheless, in September of 1990, Persinger and Larrowe began negotiating Larrowe's possible return to the firm. Persinger and Larrowe agreed that Larrowe would return to the Galax office as an office partner and that Larrowe would be offered a position as a general partner after a short time. Larrowe returned to Persinger's Galax office as agreed in December of 1990. In November of 1991, a member of Persinger's Executive Committee, Odell Hamden presented Larrowe with an Office Partner Non-Competing Agreement along with a note requesting that he execute same. However, Larrowe never re-executed that agreement, and no one at Persinger followed up on the matter. However, Larrowe did discuss with his "mentor" at Persinger, Martin Williams, that he would not execute the non-compete provision until he was offered general partner status. Mr. Williams told Larrowe to discuss this position with Mr. Hamden, but Larrowe never did.

During the summer of 1992, Persinger and Larrowe entered into negotiations regarding Larrowe's promotion to general partner status. In the course of the negotiations, Persinger presented Larrowe with a copy of the firm's General Partnership Agreement to review. In July of 1992, at Larrowe's request, Larrowe was given an opportunity to address the Executive Committee to present his demands in connection with his becoming a general partner. Although Larrowe stated that he wished to negotiate the terms of his salary (as provided in Article 7.4) and to negotiate his ownership units (as provided in Article 4.1), Larrowe never mentioned any dissatisfaction with Article 24, the non-compete clause. Larrowe reached a compromise with the Executive Committee on the ownership units and salary issues which Larrowe

raised in his July meeting with the Executive Committee, and, on September 1, 1992, Larrowe wrote to the Executive Committee accepting the firm's offer of a general partnership interest.

At no time did anyone at Persinger ask Larrowe to sign a partnership agreement. Nevertheless, between September 1, 1992, and January 26, 1993, Larrowe acted as a general partner in the firm. On January 26, 1993, Larrowe advised Persinger that he was resigning from the firm. After his resignation, Larrowe started his own accounting practice but continued to perform accounting services for Persinger clients.

The issue before the Court is whether Larrowe is bound by the non-compete clause found in Article 24 of Persinger's General Partnership Agreement, even though Larrowe did not sign the Agreement. Persinger asserts that Larrowe is bound by the Agreement, and the Court agrees.

The fact that Larrowe did not sign the Agreement is immaterial. Article 26.3 of the Agreement specifically states with regard to the obligations and rights of general partners that "such obligations and rights shall be automatically assigned to the partners constituting the general partnership created by this Agreement as of any particular date; and, such assignments shall be effective without any further affirmative action on the part of the parties hereto." *See also* 59A Am. Jur., *Partnership*, § 111. Furthermore, it is undisputed that Larrowe acted as a general partner and that he accepted the rights and benefits accorded to general partners under the agreement. "A person cannot accept and reject the same instrument, or, having availed himself as to part, defeat its provisions in any other part; and this applied to deeds, wills, and all other instruments whatsoever." *School Bd. of City of Roanoke v. Payne*, 151 Va. 240, 249, 144 S.E. 444, 446 (1928). Therefore, Larrowe must also accept the liabilities and obligations attendant to general partner status, including the obligation not to compete or to suffer the consequences as provided in Article 24.

Although Larrowe now claims that he never agreed to accept the non-compete clause, he did not make his dissatisfaction known to Persinger. The Court must look to a person's outward expression as manifesting his true intention, rather than to some secret and unexpressed intention. *Lucy v. Zehmer*, 196 Va. 493, 84 S.E.2d 516 (1954). Larrowe was specifically made aware that Persinger required its office partners and general partners to be bound by the Article 24 non-compete clause when he signed the first "Office Partner Non-

Competing Agreement," when he was presented with the second "Office Partner Non-Competing Agreement," and when he was given a copy of the General Partnership Agreement to review. Larrowe's only objection was that he would not sign the second "Office Partner Non-Competing Agreement" until he was made a general partner. Moreover, Larrowe did not voice any objection to Article 24 when he met with the Executive Committee during the negotiations prior to his acceptance of general partner status. From all outward appearances, Larrowe intended to be bound by Article 24 when he attained general partner status just as the rest of the general partners were. The Court cannot now accept Larrowe's contention that his secret intention not to be bound by the non-compete clause should be controlling.

Larrowe further contends that the Statute of Frauds renders the Agreement unenforceable. Larrowe correctly stated that the Statute of Frauds is codified in Virginia at Va. Code Ann. § 11–2. However, Larrowe misapplies the Statute of Frauds to this case. Larrowe claims that the Statute of Frauds makes the Agreement invalid because the non-compete clause requires performance by Larrowe in future years and cannot be performed within a year. The Article 24 non-compete clause is but one term in an entire contract, and the Court must view the contract in its entirety when determining whether the Statute of Frauds applies. *Silverman v. Bernot*, 218 Va. 650, 239 S.E.2d 118 (1977). Viewing the contract in its entirety, a contract that is capable of being performed in one year, even if only upon the occurrence of some improbable event, is not subject to the Statute of Frauds. *Id*; *Falls v. Virginia State Bar*, 240 Va. 416, 397 S.E.2d 671 (1990). The contract known as the General Partnership Agreement could be performed in one year if the partnership were terminated and dissolved under Article 25.1 of the Agreement. Although only a remote probability, the possibility of termination and dissolution at any time by mutual agreement of all partners makes the contract fully performable in one year. Consequently, the Statute of Frauds does not apply to this Agreement.

Because Larrowe accepted the benefits of general partner status, he must also accept the liabilities and obligations of partnership status. The fact that he did not sign the General Partnership Agreement is not controlling. When Larrowe accepted general partnership status, according to the terms of the partnership agreement, he immediately became bound by the Agreement without any further action being required on his part. Additionally, because Larrowe accepted some of the

benefits and obligations assigned to partners under the Agreement, he cannot now reject other obligations assigned to partners under the Agreement. This is especially true when Larrowe's outward actions during his negotiations for general partner status and his subsequent tenure as a general partner could only be reasonably interpreted as acceptance of the non-compete clause. He completely failed to bring his secret dissatisfaction with the non-compete clause to the attention of the Executive Committee when he had the perfect opportunity to be open and honest about it. As the Agreement by which the general partners were bound is not barred by the Statute of Frauds, the Court holds that Larrowe is bound by the Article 24 non-compete clause. Persinger's request for a declaratory judgment should be granted.