# CIRCUIT COURT OF THE CITY OF RICHMOND

Convalescent Care, Inc.

v.

Department of Medical
Assistance Services

May 22, 2002

Case No. HQ-2415

BY JUDGE T. J. MARKOW

This case is before the Court on Convalescent Care's appeal of the final agency decision issued by the Department of Medical Assistance Services denying reimbursement and affirming the department's incentive calculation procedures.

Convalescent Care timely appealed five issues relating to an audit conducted of its cost reports for 1996 to 1998 according to the Department's appeal procedures. An informal fact finding conference was conducted on November 7-8, 2000, that led to the resolution of certain issues. Convalescent Care requested a formal appeal hearing on all remaining issues, and that hearing was conducted before Hearing Officer James A. Eichner on May 21-22 and June 4-5, 2001. Eichner rendered findings of fact and conclusions of law on August 21, 2001, to which both parties filed exceptions. On October 16, 2001, Eric S. Bell, Director of the Department, rendered the final agency decision being appealed. Each of the five issues is separately discussed below.

*Standard of Review*

The Court reviews the agency's decision based upon three principles: first, whether the agency acted in accordance with state law; second, whether the agency had sufficient evidentiary support for its decision; and, third,

whether the agency made a procedural error that is not harmless. Va. Code § 9-6.14:17.

In the case at bar, the Court finds no procedural error and will thus proceed to analyze the facts based on whether the agency acted in accordance with state law and whether there was sufficient evidentiary support for its decision.

### Physician/Insurance Service Costs

Convalescent Care, Inc., hosted events and provided services to physicians, hospital discharge planners, and insurance company caseworkers which petitioner alleges were to inform and educate these professionals of the availability of Convalescent Care services and to promote a good public image.

The Director in his final agency decision disallowed these costs, finding that they violated a number of Medicaid principles: (1) the costs are not common or accepted in the industry as required by Provider Reimbursement Manual §§ 2102.2 and 2102.3; (2) the costs do not serve an educational purpose as required by PRM § 2136.1; (3) the costs were not contemporaneously documented pursuant to 12 VAC 30-90-20, 12 VAC 30-90-57, and 12 VAC 30-90-110; and (4) the costs are not reasonable and related to patient care as required by 42 C.F.R. § 413.9 and PRM §§ 2102.3 and 2105.8.

The Director also relied on testimony from Convalescent Care's witness, Sheri Rosner, that the costs incurred were for events which were unique and the witness' own idea; and that at the ball games no literature was passed out; as well as a lack of testimony as to the educational purposes of box lunches provided to physicians. In addition, she admitted that the meals, candy jars, and gift baskets given to health care professionals did nothing to inform people of Convalescent Care's services and only served as an excuse to get to see them.

Petitioner argues that the Department is barred by either res judicata or collateral estoppel and, therefore, must reimburse for these costs because it has done so in past reporting periods; that the Director gave insufficient deference to the Hearing Officer's decision; and that the Director subjected Convalescent Care to retroactive application of PRM § 2105.8.

The Director interprets the applicable regulations to permit the Department to reject costs that it determines are not common and accepted in the provider's industry.

Convalescent Care's witness testified that the gifts and events were unique to the industry. Further, the Department's witness testified that the Department never allowed expenses for gift baskets, that the Department has never approved reimbursement for tickets to sporting events, tickets to plays and hors d'oeuvres at theaters, or professional photographs taken at sporting events.

The Director cites valid statutes and regulations in support of his findings that the costs must be common or accepted in the industry, must serve an educational purpose, and must be reasonable and related to patient care. Further, the evidence at the hearing from Convalescent Care's own witnesses regarding the various events supports the Director's finding that the costs incurred do not qualify for reimbursement.

Res judicata bars litigation of the same cause of action, i.e based on the same facts and issues. Here, the data submitted by Convalescent Care must be current for each reporting period and thus is necessarily different from period to period. Thus, while the issues may be the same, whether certain events are reimbursable, the facts cannot be the same if petitioner is submitting accurate data. Therefore, the doctrine of res judicata is inapplicable.

It has long been the law in Virginia that the doctrine of estoppel does not apply to state government or agencies acting in a governmental capacity. (*Sink v. Commonwealth*, 13 Va. App. 544, 413 S.E.2d 658 (1992); *Falls v. Virginia State Bar*, 240 Va. 416, 397 S.E.2d 671 (1990)). Therefore, the doctrine of estoppel is inapplicable as well.

Va Code § 2.2-4040 permits the Director to treat the Hearing Officer's findings as a recommendation only, except with regard to those findings based on the demeanor of witnesses, and even then it must be explicitly stated. (*Beverly Health and Rehab. v. Metcalf*, 24 Va. App. 584, 484 S.E.2d 156 (1997)).

Further, although the Court finds that the Director's application of PRM § 2105.8 to be retroactive, as it was enacted in 1998, and impermissible, there remains adequate legal authority and sufficient evidentiary support for the Directors decision to disallow the physicians/insurance services costs.

## Community Awareness Costs

Convalescent Care submitted for reimbursement the cost of four video announcements that ran on local network television stations. Petitioner alleges that these commercials were intended to promote a good public image and to apprise the public at large as to the availability of Convalescent Care's services.

The Director disallowed these costs pursuant to PRM § 2136.2 which prohibits costs which are for the purpose of increasing patient utilization. In viewing the tapes at issue, the Director concluded that the primary purpose was to increase patient utilization. Upon its review, the Court agrees.

The testimony of Convalescent Care's witness was that the ads were run at times to target primarily women in the fifty-plus age groups because they are probably care givers. The Department's witness testified that the use of words like referral and recommend give cause to the auditors to conclude that the facility is attempting to attract patents. The Director concluded that the ad was directed toward the general public, marketed towards caregivers, and nothing in the ad was directed at current patients.

Petitioner contends that it could not have been seeking to increase its patient utilization because at all times relevant to this proceeding it operated its facilities at or near 98% of capacity. Petitioner further alleges that the doctrine of res judicata bars the Department from disallowing these costs because literally identical costs have been allowed in the past.

The Director cites a statute which permits the Department to disallow costs of advertising that appear to be in the nature of public relations activity if it is in fact an effort to attract more patients. Based on witness testimony that the ads were targeting caregivers and that the use of certain terms signal an attempt to increase patient utilization, sufficient evidence was presented to support the Director's decision to disallow these costs.

The fact that petitioner operates near capacity does not preclude the Court from assuming that like all businesses, petitioner would like to operate at 100%. Further, the Court has already addressed the inapplicability of the doctrine of res judicata above.

*Interests Costs*

Convalescent Care submitted for reimbursement costs for borrowing necessitated by a period of de-certification at its Forest Hill facility. Petitioner claims this reimbursement for interest on borrowings that accrued on those loans after certification was restored.

The Department disallowed this expense because, based on the Temporary Management Agreement, the parties contracted for Convalescent Care to assume the responsibility of replacing lost federal funds during the period of de-certification and costs related to that borrowing include the underlying payments on the loan and the cost incurred in securing the loan regardless of when those costs accrue. Further, the Director found that, if a facility not certified as a provider were reimbursed for costs, fundamental principles of Medicaid would be violated.

Petitioner alleges that the costs meet the test of PRM §§ 202.1 and 202.2 as necessary and related to patient care and that the Director gave improper deference to the Hearing Officer's findings.

Petitioner does not deny that it contracted to assume responsibility for replacing lost federal funds, and thus the Director's contract interpretation is uncontroverted. Further, interest on borrowed money is attributed to the borrowing whether it is assessed at the beginning, the end, or upon each payment in between. Petitioner cannot separate out the interest payments resulting from a loan necessitated by de-certification and be reimbursed for that interest because it accrued on those loans after the facility became certified again. To permit such reimbursement would require Medicaid and the Department to treat certified and de-certified facilities alike, and that the Court will not do.

Whether or not the interest costs meet the test of §§ 202.1 and 202.2 has no relevance because petitioner fails to overcome its lack of certification at all times relevant to this analysis in order to be permitted to apply principles of reimbursement to these costs in the first place. As noted above, analyzing petitioner's cost submission on the basis of the "necessary and related to patient care" test would result in treating petitioner like a certified facility for purposes of determining reimbursement. The pivotal issue here is that petitioner's facility was not certified at the time.

Petitioner's argument with regard to the Director's failure to give proper deference to the Hearing Officer's decision has been addressed above.

*Refinancing Incentive*

Convalescent Care refinanced its Valley, Westport, Forest Hill, and Colonial Heights facilities and qualified for refinancing incentive.

The Department calculated the refinancing incentive based on 12 VAC 30-90-33(A)3. Further, the Department maintains that every incentive amount is subject to the Medicaid Utilization calculation, because the Department should only pay for Medicaid patients.

Petitioner alleges that the net savings is to be calculated based on 12 VAC 3-090-33(A)1 and that, once the incentive factor is multiplied by the net savings, there is no statutory authority for applying the Medicaid Utilization calculation.

In interpreting its own regulations, the Department has determined that for the purpose of calculating net savings, 12 VAC 30-90-33(A)3 controls. That section of the code is entitled "Net Savings" and, when read for instructional purposes, takes one through the entire process of calculating net

savings. Further, if petitioner's argument with regard to calculating net savings were followed, that is, if net savings were calculated based on 12 VAC 30-90-33(A)1, there would be no need for the paragraph entitled net savings.

The Director maintains that 12 VAC 30-90-33(A)4 authorizes the application of the Medicaid Utilization factor to any incentive, because subject to per diem calculations means applying the utilization factor. The regulation states that the result (of multiplying the incentive factor by the net savings) shall be included in the cost report settlement, subject to the per diem computations under 12 VAC 30-90-30B and C and 12 VAC 30-90-55A. A look at those referenced regulations reveals that per diem calculation means calculating Medicaid patient days versus total patient days and is the same as Medicaid Utilization Calculations.

In accordance with Virginia law, great deference is afforded the agency in the interpretation of its own regulations. (*Fralin v. Kozlowski*, 18 Va. App. 697, 447 S.E.2d 238 (1994)). However, when the regulation is clear, as it is in this instance, no interpretation is required on the part of the agency. One need only read the 12 VAC 30-90-33(A)4 to see that, when the agency created the incentive for refinancing, it intended that the Medicaid Utilization factor apply to the incentive amount, pursuant to the final sentence of 12 VAC 30-90-33(A)4.

Having found that no procedural error exists in the record of this case and having further found that, in each of the four instances specifically raised by petitioner, respondent's decision is in accordance with law and supported by sufficient evidence, the Court finds no reason to disturb the Director's Final Agency Decision. It is therefore ordered that the Final Agency Decision rendered by Eric S. Bell on October 16, 2001, is hereby affirmed, and the appeal of Convalescent Care, Incorporated, is denied.