**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2500**

BLUE SKY TRAVEL AND TOURS, LLC; MAHMOUD RIAD MAHMOUD,

Plaintiffs - Appellees,

v.

NASSER AQEEL AL TAYYAR; AL TAYYAR GROUP,

Defendants - Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony J. Trenga, District Judge; Ivan D. Davis, Magistrate Judge. (1:12-cv-01142-AJT-IDD)

Argued: January 28, 2015          Decided: March 31, 2015

Before SHEDD, DUNCAN, and KEENAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion. Judge Keenan wrote the majority opinion, in which Judge Duncan joined. Judge Shedd wrote a dissenting opinion.

**ARGUED:** Christopher M. Curran, WHITE & CASE LLP, Washington, D.C., for Appellants. Warner Franklin Young, III, ALLRED, BACON, HALFHILL & YOUNG, PC, Fairfax, Virginia, for Appellees. **ON BRIEF:** Nicole Erb, Matthew S. Leddicotte, WHITE & CASE LLP, Washington, D.C., for Appellants. Matthew C. Indrisano, ALLRED, BACON, HALFHILL & YOUNG, PC, Fairfax, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal concerning the breach of an oral contract, we consider whether the district court erred in denying the defendants' motion for judgment as a matter of law asserting a defense of the statute of frauds. We also consider whether the district court abused its discretion in affirming the magistrate judge's imposition of an evidentiary sanction after determining that the defendants spoliated evidence.

Upon our review, we conclude that the district court did not err in rejecting the defendants' defense of the statute of frauds. However, on the sanction issue, we hold that the court applied an incorrect legal standard in concluding that the defendants spoliated evidence, and we remand the matter to the district court for application of the correct legal standard and further factual development. Accordingly, we affirm in part, and vacate in part, the district court's judgment, and remand the case for further proceedings.

I.

This case involves a breach of contract dispute between two travel agencies and their respective principals. Dr. Nasser Aqeel Al Tayyar (Nasser) is the founder and vice chairman of the "Al Tayyar Group" (ATG), a large travel agency based in the Kingdom of Saudi Arabia (Saudi Arabia). ATG has a contract with

2

the Ministry of Higher Education of Saudi Arabia (the Ministry), under which ATG facilitates the travel of Saudi students outside Saudi Arabia whose travel arrangements are paid by the Ministry. To provide ATG greater access to the airline ticketing market in the United States, ATG sought to work together with a travel company in the United States accredited by the Airlines Reporting Corporation (ARC).

In March 2011, an ATG representative contacted Mahmoud Riad Mahmoud (Riad), the owner of "Blue Sky Travel and Tours, Inc.," a travel agency holding ARC accreditation, concerning a potential business relationship. Nasser traveled to the United States in June 2011 to meet with Riad and, over the course of several days, discussed forming a partnership to service ATG's contract with the Ministry.

During these meetings, Riad and Nasser entered into an oral agreement to facilitate ATG's contract with the Ministry involving Saudi students traveling to and from the United States. Under the oral agreement, Riad and Nasser agreed to form a new entity, "Blue Sky Travel and Tours, LLC" (Blue Sky).[1] The parties' contract provided that Blue Sky would receive,

---

[1] Riad also agreed to cease operating Blue Sky Travel and Tours, Inc. in exchange for $850,000 from Nasser, which amount the parties later agreed to reduce to $661,000. After that company ceased operating, Riad transferred its ARC license to the new entity that he formed with Nasser.

through ATG, requests from the Ministry for airline tickets for students. Blue Sky was required to search for the least expensive available tickets, purchase such tickets on the students' behalf, and send the invoices to ATG for reimbursement and payment to Blue Sky of an additional $100 fee per ticket. In turn, ATG agreed to "resell" the tickets to the Ministry at a greater price than Blue Sky had paid for the tickets.

Riad alleged that Nasser agreed to provide Blue Sky additional compensation in the form of shared profits. According to Riad, Nasser promised that around December 2012, ATG would calculate its profits from reselling the tickets to the Ministry and would pay Blue Sky 50 percent of those profits. Riad stated that Nasser told him that he would earn between $5 million and $6 million in profits under the arrangement. Nasser, however, denied that he agreed to share ATG's profits with Blue Sky. The parties did not memorialize their agreement in writing.

In May 2012, Blue Sky began issuing tickets for Saudi students under its contract with ATG. In less than two months, Blue Sky had purchased airline tickets for about 8,500 passengers, at a total cost to Blue Sky of around $18 million. However, ATG quickly became dissatisfied with Blue Sky's performance. ATG particularly was concerned with Blue Sky's documentation practices, which caused significant problems with

4

ATG's ability to resell the tickets to the Ministry. Around the end of June 2012, ATG ceased sending Blue Sky ticket requests from the Ministry.

In October 2012, Blue Sky and Riad (collectively, Blue Sky) filed a complaint in the district court against ATG and Nasser (collectively, ATG), alleging among other things that ATG breached its contract with Blue Sky by failing to pay money owed under the agreement. As set forth in its amended complaint, Blue Sky asserted that ATG breached the oral agreement by: (1) failing to reimburse Blue Sky for the cost of tickets and service fees in the amount of $1,976,412.72; and (2) refusing to pay any portion of the profits ATG earned after reselling the tickets to the Ministry.[2] ATG responded to the amended complaint by raising numerous affirmative defenses, including that the oral agreement was unenforceable under the statute of frauds.

The allegations in the complaint related almost entirely to ATG's relationship with Blue Sky, and, as relevant to this appeal, did not mention any other companies used by ATG to purchase tickets for the Ministry. During discovery, Blue Sky

---

[2] The complaint contained numerous additional claims asserted against ATG and Nasser. Of these additional claims, only Riad's personal claim against Nasser for breach of contract relating to the closure of his previous travel agency was decided by the jury, which found in favor of Riad and awarded him $661,000. Neither that claim nor any of the additional claims alleged in the complaint are at issue in this appeal.

requested documents concerning ATG's relationship with the Ministry, which requests were limited to ATG's business with Blue Sky. ATG produced to Blue Sky all invoices sent to the Ministry for tickets purchased by Blue Sky.

Blue Sky first directly raised the issue of ATG's invoices involving vendors other than Blue Sky on June 18, 2013, in a deposition taken of ATG's chief accountant, Hany Ragaie. Blue Sky's counsel requested during that deposition "documents that reflect what the Ministry has paid in calendar year 2012 and what the cost of the goods was, the tickets that were delivered to the Ministry" involving all ATG vendors. ATG did not agree to produce the documents sought at the deposition regarding the other vendors.

Thereafter, Blue Sky filed a motion to compel discovery concerning Blue Sky's original request for documents, which related only to ATG's business with Blue Sky. The motion also requested the documents discussed during Ragaie's deposition showing the prices paid by the Ministry for tickets purchased by all twenty-eight vendors used by ATG.

During a July 2013 hearing on the motion to compel, Blue Sky asked the magistrate judge to order ATG to produce the invoices that ATG sent to the Ministry for all ATG's vendors. Counsel explained that Blue Sky's purpose in seeking that information was to test the validity of ATG's claim that it had

6

charged a markup of only five percent on all its airline tickets purchased on behalf of the Ministry. The magistrate judge issued an order requiring ATG to produce the documents requested in Blue Sky's motion. After ATG did not produce any documents to Blue Sky in response to the magistrate judge's order, Blue Sky filed a motion requesting sanctions.

The magistrate judge held a hearing on Blue Sky's motion for sanctions on August 2, 2013. Upon deciding that invoices and other documents dealing with all the ATG vendors could be relevant to Blue Sky's theory of damages, the magistrate judge ordered ATG to produce copies of invoices ATG sent to the Ministry for tickets purchased by all the vendors.

ATG did not produce any invoices in response to the magistrate judge's order. Instead, ATG produced around 5,000 pages of computer spreadsheets containing pricing information on ATG's resale of tickets from the twenty-eight vendors to the Ministry.

In response, Blue Sky filed a renewed motion for sanctions. At a hearing on that motion, the magistrate judge again ordered ATG to produce the invoices. The magistrate judge imposed several sanctions on ATG at that time, including prohibiting ATG from arguing that it received only a five-percent profit from the Ministry for reselling tickets purchased by ATG's vendors. The magistrate judge further warned that he would impose

additional sanctions if ATG did not comply with the court's order.

ATG did not produce any additional documents in response, and instead filed a motion for limited reconsideration of the sanctions order. In that motion, ATG represented for the first time that it no longer retained the invoices from the other vendors. ATG attached to its motion an affidavit from Ragaie, in which he attested that ATG transcribed information concerning the invoices paid by the Ministry onto a Microsoft Excel worksheet, and stated that "ATG does not retain copies of the original invoices submitted to the [Ministry] after they are submitted and paid by the [Ministry]." In response, Blue Sky filed a motion requesting that the court enter default judgment against ATG.

At a hearing held in September 2013 to determine whether ATG spoliated evidence, the magistrate judge admonished counsel for ATG, stating that "when this litigation started, the defendants were required by law to preserve. Any document retention policy you had had to be stopped." The magistrate judge further informed counsel for ATG that "[o]nce you are put on notice that there is litigation pending or once litigation starts, you are required . . . to stop [your] normal document retention policies and to preserve all documents because you don't know what may or may not be relevant." The magistrate

8

judge rejected ATG's argument that Blue Sky's complaint did not put ATG on notice that invoices relating to vendors other than Blue Sky could be relevant in the case. Additionally, the magistrate judge did not make any credibility findings concerning Ragaie's affidavit.

At the conclusion of the hearing, the magistrate judge determined that additional sanctions were appropriate because ATG "completely failed to fulfill [its] obligation[] to preserve documents subsequent to the initiation of this litigation." The magistrate judge held that entry of default judgment was not warranted, but that the jury would be given an adverse instruction permitting the jury to presume that ATG made $20 million in profits in reselling to the Ministry the tickets originally purchased by Blue Sky.

ATG filed exceptions in the district court to the September 2013 sanctions order, under Rule 72 of the Federal Rules of Civil Procedure. The district court held a hearing on the motion, and later issued an order denying ATG's exceptions and affirming the adverse jury instruction sanction imposed by the magistrate judge. The district court concluded that the relief imposed by the sanction was "necessary to address effectively the prejudice to the plaintiffs caused by defendant's failures."

Thereafter, the parties consented to ATG's request to bifurcate a portion of the trial. Under the proposal accepted

9

by the district court, the jury would determine whether the parties formed an oral agreement requiring ATG to split the profits ATG earned upon reselling the tickets to the Ministry. If the jury found that there was such an agreement, the district court rather than the jury would determine the amount of lost profit damages to which Blue Sky was entitled. With the jury no longer determining the amount of lost profit damages, the court construed the adverse jury instruction sanction as creating an evidentiary presumption applicable at the damages hearing.

The case proceeded to trial. After Blue Sky presented its evidence, ATG moved for judgment as a matter of law, arguing among other things that the Virginia statute of frauds barred any action based on the oral agreement. The district court denied the motion at that time.

At the conclusion of the three-day trial, the jury determined that ATG breached its agreement to compensate Blue Sky for the costs and service fees for the airline tickets at issue. The jury entered a verdict awarding Blue Sky damages of $1,940,050.89. The jury also concluded that there was, in fact, an oral agreement between ATG and Blue Sky to split the profits earned by ATG upon its resale of the airline tickets to the Ministry.

The case was submitted to the district court to determine the amount of profits to which Blue Sky was entitled. The court

10

held a hearing at which the parties made arguments regarding lost profit damages, as well as arguments on ATG's renewed motion concerning the statute of frauds. The court did not hear testimony or receive other evidence at this hearing.

Following the hearing, the district court issued a memorandum opinion, in which the court denied ATG's defense of the statute of frauds. The court concluded that it was possible for Blue Sky to have completed its performance within one year of the contract's formation in June 2011, and that, therefore, the Virginia statute of frauds did not apply. The court next held that because ATG did not produce evidence rebutting the presumption that ATG made $20 million in profits from its resale of tickets to the Ministry, Blue Sky's 50-percent share of those profits entitled Blue Sky to $10 million in damages. After denying ATG's additional motions for judgment as a matter of law and for a new trial, the district court entered final judgment in favor of Blue Sky. ATG timely filed a notice of appeal.


II.

ATG raises two arguments on appeal. ATG first asserts that the district court erred in rejecting ATG's defense of the statute of frauds. ATG also contends that the district court abused its discretion in imposing sanctions on ATG for failing

11

to retain invoices of vendors other than Blue Sky.  We discuss these arguments in turn.

## A.

We first address ATG's contention that the district court erred in rejecting ATG's defense of the statute of frauds.  ATG asserts that full performance of the parties' oral contract could not be accomplished within one year and, thus, that any action based on the oral contract was barred under Virginia law by the statute of frauds.  In support of this argument, ATG relies primarily on Blue Sky's allegation that the parties' contract required ATG to calculate and distribute its profits, at the earliest, in December 2012, which date was more than one year after the contract was formed in June 2011.  ATG also contends that Blue Sky was required to provide ticket exchange services under the contract, and that full performance of that obligation could not be made until more than one year after the date of the contract.  We disagree with ATG's arguments.

We review de novo the district court's denial of ATG's Rule 50 motion addressing the statute of frauds.  See Fontenot v. Taser Int'l, Inc., 736 F.3d 318, 333 (4th Cir. 2013).  In conducting this review, we consider the evidence in the light most favorable to Blue Sky, the nonmoving party.  Id.

The parties agree that Virginia law applies in considering whether the statute of frauds barred the present action

12

concerning the parties' oral contract.[3]  The Virginia statute of frauds provides in relevant part that "[u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought . . . [u]pon any agreement that is not to be performed within a year."  Va. Code § 11-2(8).

Critically, the Supreme Court of Virginia has held that the statute of frauds applies only if both parties to an oral contract are incapable of performing their contractual obligations within one year of the contract's formation. Silverman v. Bernot, 239 S.E.2d 118, 121 (Va. 1977) (stating that the statute of frauds is inapplicable if the contract can be fully performed "on one side" within one year). Additionally, courts examining whether an agreement falls within Virginia's statute of frauds do not examine the actual course of contract performance, but rather undertake a theoretical approach to determine whether the contract is capable of being

---

[3] See United States v. Rosen, 487 F. Supp. 2d 721, 729 (E.D. Va. 2007) (holding that the Virginia statute of frauds applies to all disputes concerning unwritten contracts when Virginia is the forum state in which the dispute is adjudicated); see also Cosey v. Prudential Ins. Co. of Am., 735 F.3d 161, 169 n.7 (4th Cir. 2013) (applying law of forum state, as agreed by the parties, in interpreting the terms of the contract).

13

fully performed by either party within one year.[4]  See id.

("[W]hen by its terms, or by reasonable construction, such a

contract can be fully performed on one side within a year,

although it can be done by the occurrence of some improbable

event, . . . the contract is not within the statute and need not

be in writing.") (emphases added).

Applying the holding in Silverman to the present matter, we

conclude that it was possible for Blue Sky to fully perform its

obligations under its oral contract with ATG within one year of

the contract's formation in June 2011.  As the district court

observed, the contract was premised on ATG receiving ticket

requests from the Ministry.  Although Nasser predicted, and Riad

hoped, that Blue Sky would receive many ticket requests through

the end of 2012, there remained the possibility that the

Ministry would cease funding student travel through ATG or would

order only a small number of tickets.[5]

---

[4] See also Rosen, 487 F. Supp. 2d at 729 (holding that employer's agreement to advance legal fees to employees for an indefinite period in connection with criminal investigation was not within statute of frauds, because of the possibility the investigation and prosecution could have been completed within one year of the agreement).

[5] The district court concluded that it was uncertain when and under what circumstances ATG's contract with the Ministry expired.  The court additionally observed that the ATG-Ministry contract was "silent as to any commitment or obligation on the part of the Ministry to actually order any tickets or use any other services of ATG," and that the court could not rule out
(Continued)

14

Under the circumstances of the parties' agreement, it was therefore possible that there could have been only a single ticket request made to Blue Sky through ATG and the Ministry, and that such a request could have been made within one year of the agreement between Blue Sky and ATG in June 2011. Blue Sky could have purchased the ticket, issued it to the student, and sent the invoice to ATG within that one year. If Blue Sky did not receive another ticket request because the Ministry had terminated its relationship with ATG, Blue Sky would have fully performed its obligations under the agreement within one year of the contract's formation.[6] In that hypothetical situation, it is

---

the possibility that "the contract continued as a contract terminable for cause or for the convenience of the Ministry." ATG does not argue on appeal that the district court erred in reaching these conclusions.

[6] In asserting the opposite conclusion, our colleague in dissent misreads the decisions in <u>Silverman</u> and <u>Falls v. Virginia State Bar</u>, 397 S.E.2d 671 (Va. 1990). In neither case did the Supreme Court of Virginia announce a per se rule that any contingency must be specified in the oral contract as constituting full performance to remove the contract from the statute of frauds. The dissent notes correctly that the court in <u>Falls</u> held that death, resignation, or discharge for cause could not constitute full performance in an oral employment contract unless the parties so specified. <u>See</u> 397 S.E.2d at 672-73. However, the <u>Falls</u> holding stands for the unremarkable position that events not otherwise considered to be full performance may be considered as such upon the parties' agreement. This was the case in <u>Silverman</u>, in which the terms of the agreement provided that death constituted full performance. <u>See</u> 239 S.E.2d at 122-23. Otherwise, as explained in <u>Falls</u> itself, an oral employment contract terminates by
(Continued)

15

immaterial whether ATG could perform its obligation to calculate and distribute profits within one year of the agreement's formation in June 2011, because it is not necessary under Virginia law that both parties are able to fully perform within one year. See Silverman, 239 S.E.2d at 121.

We are not persuaded by ATG's arguments to the contrary. ATG attacks the hypothetical situation posited by the district court, in which the court observed that it was possible under the contract for Blue Sky not to have received any ticket requests whatsoever.[7] ATG asserts that such a situation would eliminate the need for any performance, and would constitute non-performance rather than the full performance required to

operation of law upon the employee's death or resignation, and terminates by breach upon the employee's discharge for cause. See 397 S.E.2d at 673. In the present matter, however, the contract would not terminate upon Blue Sky receiving only one ticket request through ATG and the Ministry. Rather, as explained above, Blue Sky's fulfillment of that ticket request would have constituted full performance if the Ministry had ended its relationship with ATG after that one ticket had been purchased. Further, we are not persuaded by the dissent's recitation of non-Virginia precedent in support of the view that the duration of Blue Sky's potential obligation to ATG places the agreement within the statute of frauds. Cf. Southern States Life Ins. Co. v. Foster, 229 F.2d 77 (4th Cir. 1956) (applying South Carolina law); Martocci v. Greater N.Y. Brewery, Inc., 92 N.E.2d 887 (N.Y. 1950) (applying New York law).

[7] The district court also observed that even if Blue Sky had received ticket orders, Blue Sky "might have completely performed all of its duties within a year in order to receive its share of [the] profits."

16

remove the agreement from the statute of frauds.  See id. However, we do not rely on the "zero tickets ordered" hypothetical set forth by the district court, but rather the hypothetical possibility that one ticket would be ordered, which situation would allow Blue Sky to perform under the agreement.

We also do not agree with ATG's argument that Blue Sky could not have performed its contractual obligations within one year because Blue Sky purportedly was required to accommodate ticket exchange requests through the end of 2012.  ATG relies on a statement from Sherin Noor, a Blue Sky employee, who testified that Blue Sky was doing "exchanges" until January 2013 for students who needed to change the dates of their travel arrangements.  Noor stated during his testimony that "because we issued the ticket, we need to make the exchange."

Even assuming that Blue Sky had a contractual obligation to process ticket exchange requests,[8] we conclude that such an

---

[8] Although we need not reach the issue, we observe that it would be tenuous, at best, to conclude that the evidence supports a finding that Blue Sky had a contractual obligation to provide ticket exchange services.  Riad discussed during his testimony the obligations assumed by Blue Sky under the oral agreement without mentioning any servicing requirement.  Nasser also did not testify about any obligation on the part of Blue Sky to provide exchange services.  In light of the absence of such testimony from the contract principals, we do not think that Noor's ambiguous statement of a "need" to service the tickets constitutes sufficient evidence that servicing was a contractual obligation.

obligation does not require application of the statute of frauds. It would be possible, particularly under the "one ticket" hypothetical discussed above, for Blue Sky to receive and process any exchange request within one year of the contract's formation. Absent any further exchange requests, Blue Sky thus would have fully performed its obligations within one year. Accordingly, we affirm the district court's denial of ATG's defense of the statute of frauds.[9]

B.

We next address ATG's argument that the district court abused its discretion by upholding the evidentiary sanction issued against ATG on the ground of spoliation.[10] ATG asserts that the magistrate judge and the district court applied an incorrect legal standard concerning ATG's document preservation obligations in concluding that ATG destroyed documents that it had a duty to preserve. Blue Sky argues in response that the

---

[9] Because the defense of the statute of frauds in this case presents a pure question of law, we need not address ATG's argument that the district court erred by placing the burden of proof on ATG with respect to its defense. Application of the undisputed facts under the hypothetical analysis required by Silverman mandates the conclusion that the oral agreement in this case does not fall within the statute of frauds.

[10] "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted).

18

sanction was imposed on the basis of general discovery violations rather than spoliation, and that ATG waived any objections to the magistrate judge's holdings. We disagree with Blue Sky's arguments.

We find no merit in Blue Sky's argument that the sanction at issue was imposed for general discovery abuses rather than for spoliation of evidence. The magistrate judge stated in the order imposing the adverse jury instruction that the sanction was being imposed "[f]or reasons stated from the bench" at the September 2013 hearing. Unmistakably, the reasons given by the magistrate judge from the bench at that hearing addressed spoliation. The magistrate judge stated that the hearing was being held to determine whether ATG spoliated evidence, set forth his view of the legal standard applicable to spoliation, and applied that standard in concluding that ATG "completely failed to fulfill [its] obligation[] to preserve documents subsequent to the initiation of this litigation." (Emphasis added). It was on that basis, rather than on the mere failure to produce the documents or because of any other discovery failures, that the magistrate judge decided to impose the sanction at issue.

Similarly, we find no merit in Blue Sky's argument that the district court's affirmance of the magistrate judge's sanction order was not based on the magistrate judge's spoliation

19

holding. In affirming the adverse jury instruction sanction, the district court noted the possibility that ATG's actions may have "entirely eliminated" Blue Sky's ability to establish its damages for lost profits. The court's use of the term "eliminated" indicates that it was ATG's failure to preserve the documents, rather than ATG's mere failure to timely produce them, that justified the extreme sanction in the court's view. Moreover, the district court did not make an express statement that the court was affirming the sanction on a basis independent from the magistrate judge's analysis. To the contrary, the court grounded its holding on the magistrate judge's decision, concluding that ATG failed to show that "the Order of the Magistrate Judge with respect to damages was clearly erroneous or contrary to law." Accordingly, we conclude that the district court affirmed the sanction order for the reason provided by the magistrate judge, namely, spoliation of evidence.

We also disagree with Blue Sky's argument that ATG waived its appeal of the sanction order. Although a party's failure to file timely exceptions under Rule 72 to a magistrate judge's order waives the party's right to appeal that order, Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997), ATG timely

20

filed such exceptions to the magistrate judge's spoliation finding and imposition of the adverse jury instruction.[11]

We proceed to analyze for abuse of discretion the sanction imposed on ATG for spoliation. Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). Among other circumstances, a court abuses its discretion when it bases its ruling on an erroneous principle of law. Georgia Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013).

A party may be sanctioned for spoliation if the party (1) had a duty to preserve material evidence, and (2) willfully engaged in conduct resulting in the loss or destruction of that evidence, (3) at a time when the party knew, or should have known, that the evidence was or could be relevant in litigation. Turner v. United States, 736 F.3d 274, 282 (4th Cir. 2013). In the present case, neither the magistrate judge nor the district court made the crucial finding whether ATG destroyed or failed to preserve the evidence at issue, despite having known or should have known that the evidence could be relevant in the case. See Silvestri, 271 F.3d at 591; see also Turner, 736 F.3d at 282.

---

[11] Blue Sky asserts that ATG did not file exceptions to the magistrate judge's previous orders that the invoices were relevant and should be produced, but those conclusions do not constitute the spoliation finding or the resulting sanction that is at issue in this appeal.

Instead, the magistrate judge held that once litigation began, ATG had a duty to stop its document retention policies "and to preserve all documents because you don't know what may or may not be relevant." (Emphasis added). The standard applied by the magistrate judge constituted an abuse of discretion, because a party is not required to preserve all its documents but rather only documents that the party knew or should have known were, or could be, relevant to the parties' dispute. See Turner, 736 F.3d at 282. Further, the district court's imposition of the sanction based on spoliation created severe prejudice, because the evidentiary presumption effectively relieved Blue Sky of its burden to prove its damages claim for lost profits.

Accordingly, applying the principles expressed in Turner, we conclude that two unresolved issues are essential to the spoliation analysis and should be addressed in the first instance by the district court. First, the district court should ascertain the date by which ATG knew or should have known that invoices relating to other vendors could be relevant in the case. Second, the district court should establish when ATG destroyed the invoices from the other vendors. The determination whether ATG committed spoliation will rest in large part on the district court's findings regarding these two questions.

22

On remand, therefore, the district court should determine whether ATG spoliated evidence, what sanctions, if any, are appropriate, and whether a new trial on lost profits damages is necessary. However, because the spoliation sanction did not have a material impact on the liability proceedings before the jury, a new trial will not be required on the issue of liability, or on the jury's award of $1,940,050.89 in other damages.

### III.

For these reasons, we affirm the district court's judgment with respect to the court's denial of ATG's defense of the statute of frauds. We affirm the district court's liability determination and damages award in the amount of $1,940,050.89, vacate the court's profit-based damages award, and we remand this matter to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED WITH INSTRUCTIONS

SHEDD, Circuit Judge, dissenting:

I disagree with the majority's conclusion that the oral agreement in this case is not within the Virginia statute of frauds. See Va. Code Ann. § 11-2(8) (no action may be brought on an oral contract if the contract is based on an "agreement that is not to be performed within a year"). The Supreme Court of Virginia has explained that when "it appears by the whole tenor of an agreement not in writing that it is to be performed after the first year, then the contract is within the statute and must be in writing." Silverman v. Bernot, 239 S.E.2d 118, 121 (Va. 1977). However, when "by its terms, or by reasonable construction, such a contract can be fully performed on one side within a year, although it can be done by the occurrence of some improbable event, . . . the contract is not within the statute and need not be in writing." Id.

Looking at the "whole tenor" of the oral contract, as described by Mr. Riad, it clearly falls within § 11-2(8). Formed in June 2011, the contract obligated both parties to perform through the end of 2012, some 18 months later. Specifically, the contract obligated Blue Sky to purchase airline tickets at ATG's request through the end of 2012, and it obligated ATG to share its profits with Blue Sky at the end of 2012. The contract did not contain any contingency that, upon its occurrence, could constitute full performance before the 18-month period expired.

24

Therefore, there is simply no way that either party could <u>fully perform</u> its obligations within one year of June 2011.[1]

Finding to the contrary, the district court interpreted Virginia law in an extraordinary manner, stating that if a court could "<u>conjure up some contingency</u>, no matter how improbable, that would allow either Blue Sky or ATG to completely perform all of its contract obligations within one year of June 2011," then the oral agreement is not within the statute of frauds. J.A. 1309 (emphasis added). The court then concluded that because, within one year of June 2011, the Ministry could have stopped ordering airline tickets from ATG or the Ministry contract with ATG could have been terminated, either Blue Sky or ATG "might have completed their performance under their contract" during that period. J.A. 1310. In affirming the

---

[1] The "whole tenor" of the oral contract makes clear that the parties contracted for Blue Sky to purchase airline tickets at ATG's request until the end of 2012. Among other things, Mr. Riad testified that ATG handled approximately "$120 million a year" in United States tickets for the Saudi Ministry, and that Dr. Al-Tayyar told him that his profit "would be between 5 to 6 million." J.A. 829. <u>See</u> <u>Rizoti v. Plemmons</u>, 91 Fed. Appx. 793, 796-97 (4th Cir. 2003) (holding that testimony regarding the anticipated duration of the agreement established that the defendant's performance would extend beyond one year). Moreover, Mr. Riad testified that he kept his business open until January 18, 2013, "after the last student used his ticket." J.A. 841. <u>See</u> <u>Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.</u>, 386 F.3d 581, 598 (4th Cir. 2004) (noting that "courts commonly look to evidence of the course of dealing . . . in assessing ambiguous contract terms").

district court's decision, the majority asserts that Blue Sky could have fully performed its contractual obligations by purchasing a single airline ticket within one year of June 2011.

The district court and the majority misread Virginia law. In Silverman, upon which the majority primarily relies, the state supreme court held that the oral employment contract was not within the statute of frauds because it was capable of being performed by either party within one year; however, the court did not adopt a standard allowing for any contingency to be "conjured up" to remove a contract from the statute. Instead, the court concluded that the contract itself provided for "alternative performances, that is, . . . the parties contemplated that the agreement would be fully performed if either (1) the plaintiff remained in Silverman's employ until she reached the age of 62, or (2) the plaintiff remained in Silverman's employ until his death." 239 S.E.2d at 121. The court reasoned that because "the death of the employer could have occurred within the first year of the agreement," the contract was not within the statute of frauds. Id. In reaching this conclusion, the court specifically emphasized the distinction in service-contract cases between the termination of a contract by operation of law and by completion of performance, and it noted that the termination of a party's contractual duty

26

is not the same as a party's full performance of the contemplated work. Id. at 121-22.[2]

The court reiterated this point in Falls v. Virginia State Bar, 397 S.E.2d 671 (Va. 1990), in which it held that the oral employment contract, which was indefinite in duration but contingent on the employee's satisfactory performance, was within the statute of frauds. The court rejected the employee's argument that the contract could be fully performed within one year because he could have died, resigned, or been discharged for cause during that period. Applying Silverman, the court explained that "[a]lthough occurrence of any of the three contingencies . . . would have terminated [the employee's] performance during the first year of his employment, the parties' contract did not expressly provide that the occurrence of any of these contingencies would constitute full performance." Id. at 672-73. Continuing, the court noted that because the contract "contains no such provision providing for full performance in the event of those contingencies, the statute of frauds is applicable." Id. at 673.

---

[2] The district court and the majority read too much into the Silverman court's statement that the occurrence of an improbable event can constitute a party's full performance of an oral agreement. Certainly, an improbable event may lead to a party's full performance, but the event itself must be expressed in the contract.

27

As noted, the oral contract in this case obligated the parties to perform for a period of 18 months, and it did not contain a contingency that, upon its occurrence, would have constituted full performance. Thus, like the contingencies in Falls, the contingencies conjured up by the district court might have terminated Blue Sky's performance under the oral contract, but they would not have led to the "full performance" contemplated by the parties when they made the contract. See also Lee's Adm'r v. Hill, 12 S.E. 1052 (Va. 1891) (holding that an agreement for one year's service, made in August and to commence in October, was within the statute because the employee's promise could only be performed by service for the full year).

Moreover, although Blue Sky's purchase of any airline tickets during the 12-month period after June 2011 would constitute partial performance of Blue Sky's contractual obligations, partial performance is insufficient to remove this contract from § 11-2(8). Because Blue Sky was contractually obligated to purchase tickets at ATG's request until the end of 2012, it could not fully perform its obligations within one year after June 2011. See generally Southern States Life Ins. Co. v. Foster, 229 F.2d 77, 81 (4th Cir. 1956) ("Until the arrival of each of those months, the waiver for that month could not be tendered; until then, neither the appellant, nor the appellees,

28

could perform their agreement for that month. . . ."); <u>Martocci v. Greater N.Y. Brewery, Inc.</u>, 92 N.E.2d 887, 889 (N.Y. 1950) ("The endurance of defendant's liability is the deciding factor. The mere cessation of orders from Lorillard to defendant would not alter the contractual relationship between the parties; it would not constitute performance; plaintiff would still be in possession of his contractual right, though it may have no monetary value, immediately or ever.").

For these reasons, I believe that the oral contract is within the statute of frauds. Accordingly, the defendants are entitled to judgment as a matter of law.[3]

---

[3] Although unnecessary for my resolution of this appeal, I agree that the district court abused its discretion regarding spoliation of evidence. The magistrate judge applied an incorrect, overly broad standard, and the district judge applied an excessively prejudicial evidentiary presumption during the damages proceeding.